81 F.3d 891
 96 Cal. Daily Op. Serv. 2674, 96 Daily Journal
D.A.R. 4438,
96 Daily Journal D.A.R. 5369
Jose ORTIZ-SANDOVAL, Petitioner-Appellant,
v.
James GOMEZ, Director of Corrections for the State of
California, Respondent-Appellee.
 No. 94-16337.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 11, 1996.
Decided April 17, 1996.
As Amended May 8, 1996.
 
 Jose Ortiz-Sandoval, pro se, Vacaville, California, and Jeffrey L. Bleich, Munger, Tolles & Olson, San Francisco, California, for petitioner-appellant.
 Sharon G. Birenbaum, Deputy Attorney General, San Francisco, California, for respondent-appellee.
 On Appeal From the United States District Court for the Northern District of California, Ronald M. Whyte, District Judge, Presiding, D.C. No. CV-92-20580 RMW PVT.
 Before: BEEZER and HAWKINS, Circuit Judges, and QUACKENBUSH, District Judge.*
 OPINION
 BEEZER, Circuit Judge:
 
 
 1
 Jose Ortiz-Sandoval appeals the district court's denial of his petition for writ of habeas corpus. We address the question whether his naming of the California Director of Corrections rather than the warden of the prison where he is incarcerated destroys personal jurisdiction. We hold that the naming of the Director of Corrections does not destroy personal jurisdiction. On the merits, we affirm in part and remand in part.
 
 
 2
 * On November 17, 1989 in the Superior Court for Santa Clara County, a jury found Ortiz-Sandoval guilty of first degree murder in the shooting death of Enrique Tello. The trial court sentenced him to 25 years to life in prison.
 
 
 3
 Ortiz-Sandoval confessed to shooting and killing Tello. Tello lived in San Jose with Raul Chapina Gomez, Annie Fulson and Felipe Chapina Gomez. Ortiz-Sandoval had previously resided at the house but moved out two or three months prior to the shooting. One month before the shooting, Tello and Ortiz-Sandoval had an argument over the telephone bill. On October 8, 1988 at 11 p.m., the argument escalated into a fistfight. Ortiz-Sandoval left the house, then returned, breaking the window on the front door with his hand in order to gain entry. He and the others searched for his car keys, and he again left the house. Raul Chapina and Tello were talking with their backs to the front door when a shot fired from outside the house struck Tello in the back, killing him.
 
 
 4
 Relying on information given them by the other roommates, police located Ortiz-Sandoval's truck at 12:40 a.m. near a house on Sanders Street in San Jose. They learned from the occupants of the house that Ortiz-Sandoval lived in the attached garage, which had been converted to an apartment. At 3:30 a.m., discovering the key in the door, police entered the apartment without a warrant and found Ortiz-Sandoval and his brother asleep. They arrested Ortiz-Sandoval and performed a protective sweep of the apartment, finding a shotgun in an opening in the ceiling near his bed. Ortiz-Sandoval later signed a consent to search form.
 
 
 5
 Before trial, Ortiz-Sandoval moved to suppress the shotgun found in the attic space, as well as his subsequent confession and other pieces of evidence. Defense counsel based her motion on the failure of the police to knock and announce and on the impropriety of the protective sweep. The trial court denied the motion, finding that Ortiz-Sandoval's known possession of a shotgun and the shooting of Tello through a door provided a basis for the police to enter silently without knocking or announcing. Relying on the testimony of Officer McLaren that he had been informed that two or three persons might be in the garage apartment, the court found the protective sweep justified. Defense counsel asked McLaren the name of the officer who told him there could be three people inside but failed to object to his testimony or to pursue the matter further.
 
 
 6
 At trial, the court admitted evidence that Ortiz-Sandoval had called Annie Fulson's sister and threatened to kill Raul Chapina and Annie Fulson when he got out of jail. A California appellate court upheld the conviction and denied habeas relief. The California Supreme Court denied review.
 
 
 7
 On September 9, 1992, Ortiz-Sandoval filed a petition for writ of habeas corpus in U.S. District Court. The court issued an order to show cause, finding that Ortiz-Sandoval had stated cognizable claims of ineffective assistance of counsel and due process violations. The court dismissed the claims that were based solely on violations of California law. After receiving a response from the State, the district court entered an order denying the petition. Ortiz-Sandoval appeals. We have jurisdiction pursuant 28 U.S.C. §§ 1291 and 2253.
 
 II
 
 8
 In his petition, Ortiz-Sandoval named California Director of Corrections James Gomez as respondent. At our request, the parties submitted supplemental briefs on the question whether the district court lacked jurisdiction because Ortiz-Sandoval named Gomez rather than the warden of the prison where Ortiz-Sandoval is incarcerated. We review this question of personal jurisdiction de novo. Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1390 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995).
 
 
 9
 "[A] person in custody pursuant to the judgment of a State court," Ortiz-Sandoval filed his petition under 28 U.S.C. § 2254. Consistent with 28 U.S.C. § 2242, the rules governing relief under section 2254 require Ortiz-Sandoval to name the "state officer having custody" of him as the respondent. Rule 2(a), 28 foll. U.S.C. § 2254. Typically, this person is "the warden of the facility in which the petitioner is incarcerated." Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir.1994) (per curiam) (citing Brittingham v. United States, 982 F.2d 378, 379 (9th Cir.1992) (per curiam)). Failure to name the correct respondent destroys personal jurisdiction. Id.
 
 
 10
 While the warden is the typical respondent, the rules following section 2254 do not specify the warden. According to the advisory committee's note, the "state officer having custody" may be "either the warden of the institution in which the petitioner is incarcerated ... or the chief officer in charge of state penal institutions." Rule 2(a), 28 foll. U.S.C. § 2254 advisory committee's note.
 
 
 11
 The note describes examples of proper respondents in given situations. Where a petitioner is in custody due to the state action he is challenging, "[t]he named respondent shall be the state officer who has official custody of the petitioner (for example, the warden of the prison)." Rule 2, 28 foll. U.S.C. § 2254 advisory committee's note. Where the petitioner is on probation or parole, he may name his probation or parole officer "and the official in charge of the parole or probation agency, or the state correctional agency, as appropriate." Id. (emphasis added). In other cases, the petitioner may name the state attorney general. Id. The note thus contemplates a variety of possible respondents, including multiple respondents.
 
 
 12
 Directors of corrections have been held to satisfy the "person having custody" requirement.[1] King v. Lynaugh, 729 F.Supp. 57, 60 (W.D.Tex.1990) (Director of Texas Department of Corrections). Ortiz-Sandoval cites to numerous opinions in which we treat the California Director of Prisons as the respondent without directly addressing the question of his suitability. See, e.g., Aponte v. Gomez, 993 F.2d 705, 706 (9th Cir.1993). While these cases and similar cases from other courts do not provide reasoned discussion of the issue presented here, they demonstrate that naming the director rather than the warden is a very common practice.
 
 
 13
 Responding to cases cited by the State, Ortiz-Sandoval urges a distinction between habeas petitions filed by prisoners confined pursuant to federal convictions and habeas petitions challenging state convictions. He notes, correctly, that several of the cases cited by the State involve petitions challenging federal convictions.[2] See, e.g., Monk v. Secretary of the Navy, 793 F.2d 364, 369 (D.C.Cir.1986). These petitions may only be heard in the federal district in which the petitioner is incarcerated or his immediate custodian is located.[3] Id. No similar territorial restriction or concern for wide ranging forum shopping applies to petitions under section 2254 challenging state convictions. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (state prisoner may bring petition in the federal district where he is confined or in the federal district where the sentencing court is located).
 
 
 14
 Whether a state official has custody of a prisoner and has the power to produce a prisoner depends in part upon the penal system of the state in question. In California, the Director of Corrections bears "the responsibility for the care, custody, treatment, training, discipline and employment of persons confined...." Cal.Penal Code § 5054. The California Penal Code provides that, after release, no credit for time served will be granted to "a person [ ] ordered released by a court from the custody and jurisdiction of the Director of Corrections pursuant to [bail pending appeal, state habeas] or any other provision of law permitting the legal release of prisoners." Cal.Penal Code § 2900(c)(1). "[A]ny other provision of law" encompasses federal writs; the director has the power to produce the prisoner in this case. Id.
 
 
 15
 The parties also advance policy arguments regarding the orderly administration of justice. The State contends that requiring the naming of the warden as respondent will minimize "confusion, error, or delay in carrying out court orders...." Ortiz-Sandoval responds that the transfer of prisoners between prisons creates confusion when a petition is served upon a former warden. Although pursuant to California Rule of Court 977(a) we do not cite this case as decisional law, we note that in Griggs v. Superior Court, 50 Cal.App.3d 738, 123 Cal.Rptr. 583, 589, vacated on other grounds, 16 Cal.3d 341, 128 Cal.Rptr. 223, 546 P.2d 727 (1976), a California court expressed the view that confusion resulting from prisoner transfers "could be avoided by requiring the habeas corpus petitioner in a state prison to name as the person having his custody the Director of Corrections."
 
 
 16
 Both the warden of a California prison and the Director of Corrections for California have the power to produce the prisoner. Both may receive service of process. The director supervises the warden, but this does not mean that the warden is not a proper respondent. If it did, the governor would be the only proper respondent because he has supervisory power over the director. Conversely, the fact that a warden has more direct control over the prisoner than the director does not exclude the director as a possible respondent. The advisory committee notes to Rule 2, 28 foll. U.S.C. § 2254 discuss circumstances justifying the naming of multiple respondents with varying levels of control, including the California Attorney General and the Director of Corrections.
 
 
 17
 The Director of Corrections functions as a proper respondent here. A contrary result would not serve the efficient administration of justice. In cases where a prisoner has been transferred or where his immediate custodian has otherwise been put in doubt, the Director of Corrections serves as an effective respondent and eliminates procedural roadblocks to resolution on the merits. Prompt resolution of prisoners' claims is a principal function of habeas. Braden, 410 U.S. at 490, 93 S.Ct. at 1127.
 
 
 18
 Because the structure of the California penal system places prisoners in the custody of the Director of Corrections and because the notes to the rules governing section 2254 contemplate directors as possible respondents, we hold that the naming of the California Director of Corrections as respondent does not destroy personal jurisdiction in this case.
 
 
 19
 We reach the merits.
 
 III
 
 20
 Ortiz-Sandoval argues that trial counsel rendered ineffective assistance. He bases this claim on counsel's failure at the hearing on his suppression motion to preserve an objection to Officer McLaren's testimony regarding two or three persons within the garage apartment. In addition to this ground, the district court listed as a colorable claim of ineffective assistance trial counsel's failure to challenge the warrantless entry into the apartment, arguably in violation of Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
 
 
 21
 A claim of ineffective assistance of counsel is a mixed question of law and fact which we review de novo. Harris v. Wood, 64 F.3d 1432, 1435 (9th Cir.1995) (citing Sanders v. Ratelle, 21 F.3d 1446, 1451 (9th Cir.1994)). Ortiz-Sandoval faces a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment in making decisions. Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2065-66, 80 L.Ed.2d 674 (1984). Ortiz-Sandoval must demonstrate that counsel's performance was "outside the wide range of professionally competent assistance." Id. He must also establish prejudice: "[a] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Clabourne v. Lewis, 64 F.3d 1373, 1378 (9th Cir.1995) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. at 2068).
 
 A.
 
 22
 Regarding the first basis for the claim, the district court found no prejudice from defense counsel's failure to object to McLaren's testimony. The court reasoned correctly that Maryland v. Buie allows that "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990) (emphasis added). Officer McLaren testified that after Ortiz-Sandoval and his brother were secured he immediately looked around the garage apartment. The ceiling opening was large enough for the officer to fit his upper torso inside and was "just above" where Ortiz-Sandoval slept. The opening adjoined the area of the arrest, and was an area from which an attack could be immediately launched. See United States v. Lauter, 57 F.3d 212, 217 (2nd Cir.1995) (permissible to sweep, without reasonable suspicion, adjoining room in small apartment) (quoting Buie, 494 U.S. at 334, 110 S.Ct. at 1098). We determine that there was no prejudice and we do not reach the question whether trial counsel rendered ineffective assistance.
 
 B.
 
 23
 Because the district court omitted the second basis for Ortiz-Sandoval's claim of ineffective assistance from its order dismissing the petition, we remand to the district court for consideration of that ground. Although in its order to show cause the district court listed among Ortiz-Sandoval's colorable ineffective assistance claims his argument that his trial counsel failed to challenge the warrantless entry into the garage apartment, the district court failed to address the claim in its later order denying the petition. In his opening brief, Ortiz-Sandoval states that the police "act[ed] without a warrant."
 
 
 24
 The record reflects that police arrived at Ortiz-Sandoval's apartment and waited several hours before entering without a warrant. The district court should examine on remand whether trial counsel's failure to raise this issue in the motion to suppress constituted ineffective assistance.
 
 
 25
 Because Ortiz-Sandoval has not raised in this proceeding a claim of ineffective assistance of counsel by reason of the failure of his trial counsel to challenge the warrantless seizure and search of his truck, we do not address the issue. Willard v. California, 812 F.2d 461, 465 (9th Cir.1987).
 
 IV
 
 26
 Ortiz-Sandoval argues that the trial court's introduction of evidence regarding a threat he made against two witnesses rendered his trial so arbitrary and unfair that it violated due process. While a petitioner for federal habeas relief may not challenge the application of state evidentiary rules, he is entitled to relief if the evidentiary decision created an absence of fundamental fairness that "fatally infected the trial." Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir.1986), cert. denied, 479 U.S. 1068, 107 S.Ct. 958, 93 L.Ed.2d 1006 (1987). He bears the burden of overcoming the presumption of correctness due the trial court's finding that the evidence was probative and not unduly prejudicial. Id. (citing 28 U.S.C. § 2254(d)). We review this question de novo. Id.
 
 
 27
 Agreeing with the California trial and appellate courts, the district court found that the evidence rebutted self defense and was probative of Ortiz-Sandoval's consciousness of guilt of first degree murder. Ortiz-Sandoval argues that he did not present a self defense theory and that post arrest threats are not probative of premeditation. These arguments lack merit.
 
 
 28
 Ortiz-Sandoval did present an "imperfect self defense" theory in order to negate malice aforethought. See In re Christian S., 7 Cal.4th 768, 773, 30 Cal.Rptr.2d 33, 872 P.2d 574 (1994) (explaining defense). Defense counsel argued that "he thought his life was in danger. Imminent danger."
 
 
 29
 Federal caselaw, which controls here, is uniform in holding that threats are relevant to consciousness of guilt. See, e.g., Phillips v. United States, 334 F.2d 589, 592 (9th Cir.1964), cert. denied, 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965). California cases agree, undermining Ortiz-Sandoval's reliance on People v. Anderson, 70 Cal.2d 15, 32, 73 Cal.Rptr. 550, 447 P.2d 942 (1968).[4] People v. Pinholster, 1 Cal.4th 865, 945, 4 Cal.Rptr.2d 765, 824 P.2d 571 (threats "clearly admissible to show consciousness of guilt"), cert. denied, 506 U.S. 921, 113 S.Ct. 338, 121 L.Ed.2d 255 (1992).
 
 
 30
 Ortiz-Sandoval argues that he had already confessed to the sequence of events that Raul Chapina and Annie Fulson would confirm, and therefore his threat was not probative of an attempt to prevent this testimony. This argument is not persuasive.
 
 
 31
 The testimony of Chapina and Fulson differed in important respects from Ortiz-Sandoval's confession. In his confession, Ortiz-Sandoval claimed a further confrontation with the victim when Ortiz-Sandoval returned for his keys. Chapina testified that no further confrontation occurred. He also testified that Ortiz-Sandoval injured his hand breaking the window and not, as Ortiz-Sandoval sought to prove, during the fight with the victim. Fulson added that Ortiz-Sandoval threatened the victim.
 
 
 32
 The record reflects that Ortiz-Sandoval had something to gain by threatening the witnesses: the possible prevention of testimony showing his premeditation and lack of honest belief in self defense. That other witnesses might have testified similarly does not reduce the probative value of the threat. Ortiz-Sandoval had a friendship with Raul Chapina, rendering Chapina's testimony particularly damaging. Ortiz-Sandoval may also have hoped that his threat would intimidate other witnesses. The threat was probative of his consciousness of guilt on the issues of premeditation and imperfect self defense.
 
 
 33
 Ortiz-Sandoval argues that the prejudice resulting from the evidence greatly outweighed its probative value. When a trial court's weighing of prejudice versus probative value is challenged on appeal, the "trial court's exercise of broad discretion will not lightly be disturbed ... due to its proximity." United States v. Qamar, 671 F.2d 732, 735-36 (2nd Cir.1982) (citation omitted). This deference is heightened on habeas, where we afford the state trial court's conclusions the presumption of correctness of 28 U.S.C. § 2254(d).
 
 
 34
 The potential of unfair prejudice from the introduction of threats is "severe." United States v. Check, 582 F.2d 668, 685-86 (2nd Cir.1978) (dicta). There is a danger that a jury, upon hearing of threats made by the defendant against witnesses, may decide on the improper basis that the defendant is a "bad man." United States v. McManaman, 606 F.2d 919, 926 (10th Cir.1979) (citation omitted).
 
 
 35
 Ortiz-Sandoval cites only one federal appellate case where the introduction of evidence regarding threats against witnesses resulted in a denial of due process and the granting of a habeas petition. See Dudley v. Duckworth, 854 F.2d 967, 970 (7th Cir.1988), cert. denied, 490 U.S. 1011, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989). In Dudley, the trial court admitted evidence of threats unconnected to the defendant, permitting the jury to infer that the defendant had made the threats. Id. The court described the unconnected threats as an "evidentiary harpoon." Id. In this case, there is no doubt that Ortiz-Sandoval made the threats.
 
 
 36
 While there was some danger of prejudice here, the record does not permit a conclusion that the trial court abused its discretion or that the introduction of the evidence rendered the trial fundamentally unfair. See Kealohapauole v. Shimoda, 800 F.2d at 1466. The threat was not particularly inflammatory or macabre, and the trial court gave a limiting instruction.[5] See United States v. Rosa, 705 F.2d 1375, 1378 (1st Cir.1983). Moreover, any error was harmless; undisputed evidence showed that Ortiz-Sandoval deliberately walked to his truck, loaded the shotgun, walked back to the house and killed the victim. Cf. Dudley, 854 F.2d at 972 (engaging in harmless error analysis).
 
 
 37
 Ortiz-Sandoval argues that the prosecutor's closing argument that the threats showed "the kind of malice that was on his mind when he did the killing" exacerbated the prejudice and resulted in an independent denial of due process. The arguments of counsel are generally accorded less weight by the jury than the court's instructions and must be judged in the context of the entire argument and the instructions. Boyde v. California, 494 U.S. 370, 384, 110 S.Ct. 1190, 1200, 108 L.Ed.2d 316 (1990). In light of the limiting instructions, this single statement did not result in a denial of due process.
 
 
 38
 We affirm the district court's denial of the petition regarding the threat evidence.
 
 V
 
 39
 Ortiz-Sandoval challenges the district court's conclusion that he received a full and fair hearing on the "protective sweep" issue. In its order to show cause, the district court dismissed that claim with prejudice.
 
 
 40
 A Fourth Amendment claim is not cognizable in federal habeas proceedings if a petitioner has had a full and fair opportunity to litigate the claim in state court. Stone v. Powell, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 3046-47, 49 L.Ed.2d 1067 (1976). The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided. Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990); Locks v. Sumner, 703 F.2d 403, 408 (9th Cir.), cert. denied, 464 U.S. 933, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983).
 
 
 41
 Ortiz-Sandoval argues that the trial court's failure to apply Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), deprived him of a full and fair opportunity to litigate his Fourth Amendment claim. The trial court found the protective sweep reasonable based upon "[Officer McLaren's] information that there might be two or three people inside, and that his purpose, apparently, was to see if there were other people in there."
 
 
 42
 The state appellate court applied Maryland v. Buie, and upheld the protective sweep based upon the trial court's finding that the officer thought there were two or three people inside. The state appellate court held that defense counsel had failed to preserve for appeal the issue of who gave McLaren the information because, although defense counsel asked for his name, she did not object or move to strike McLaren's testimony.
 
 
 43
 Ortiz-Sandoval argues that the state trial and appellate courts erred in finding that the State had met its burden of proof based on McLaren's testimony. However, as discussed above concerning the ineffective assistance claims, the testimony was not necessary because the officers were entitled, even without reasonable suspicion, to search areas adjoining the place of arrest. We affirm the district court's dismissal of the Fourth Amendment claim.
 
 VI
 
 44
 Ortiz-Sandoval claims that the prosecutor's comment to the jury during closing arguments that "it's important that you make a statement to society about the kind of conduct that we condone and don't condone," rendered the trial fundamentally unfair, violating his right to due process. The state trial court overruled defense counsel's objection to this remark. The California Court of Appeal held that the comment was improper but did not render the trial fundamentally unfair. The district court agreed, holding that, in light of the trial court's instructions, the argument did not have "a substantial and injurious effect or influence in determining the jury's verdict or render the trial fundamentally unfair so as to deny the petitioner due process."
 
 
 45
 We affirm the district court on this issue. As noted above, the jury accords less weight to the arguments of counsel than to the court's instructions. Boyde v. California, 494 U.S. at 384, 110 S.Ct. at 1200. The trial court instructed the jury to follow its instructions, especially when they conflicted with the arguments by attorneys. The jury was also instructed not to be influenced by public opinion or sentiment, and to decide the case based upon the evidence.
 
 
 46
 Collateral relief can be granted if the prosecutor's improper comment "had substantial and injurious effect or influence in determining the jury's verdict." Jeffries v. Wood, 75 F.3d 491, 494 (9th Cir.1996) (quoting O'Neal v. McAninch, ___ U.S. ____, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); Brecht v. Abrahamson, 507 U.S. 619, 631, 113 S.Ct. 1710, 1718, 123 L.Ed.2d 353 (1993)). If left with "grave doubt" whether the error had substantial influence over the verdict, a court must grant collateral relief. Id. (citation omitted).
 
 
 47
 The comment, while improper, could not have had substantial and injurious effect upon the verdict. It was made once and not repeated. It was not the theme of the prosecutor's closing argument. It ran counter to the trial court's instructions, and the jury is presumed to have followed those instructions. Zafiro v. United States, 506 U.S. 534, 540, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). We affirm the district court on this issue.
 
 
 48
 AFFIRMED in part and REMANDED in part.
 
 
 
 *
 The Honorable Justin L. Quackenbush, Senior District Judge, Eastern District of Washington, sitting by designation
 
 
 [1]
 In support of this proposition, Ortiz-Sandoval also cites to Wainwright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), but the Court did not address the issue there; it merely listed the Secretary of Florida Department of Corrections as the petitioner
 
 
 [2]
 Ortiz-Sandoval mistakenly states that these cases involve 28 U.S.C. § 2255. They do not. Section 2255 provides for a motion to set aside or vacate a sentence, addressed to the sentencing court. Cases involving habeas petitions by federal prisoners fall under section 2241, are less frequent and often challenge administration of parole, computation of good time credit, prison conditions and deportation or exclusion. See James S. Liebman and Randy Hertz, Federal Habeas Corpus Practice and Procedure § 41.2 (2nd ed. 1994)
 
 
 [3]
 Regarding a habeas petition by a federal prisoner, this court has stated that the respondent is "the petitioner's immediate custodian. ... the person having a day-to-day control over the prisoner. That person is the only one who can produce 'the body' of the petitioner." Brittingham, 982 F.2d at 379 (internal quotations and citations omitted)
 Other courts addressing petitions by federal prisoners have held that the ultimate supervisors of immediate custodians do not qualify as respondents. See, e.g., Yi v. Maugans, 24 F.3d 500, 507 (3rd Cir.1994); In re Tripati, 836 F.2d 1406, 1407 (D.C.Cir.1988). A contrary result, they reasoned, would allow every federal prisoner to name the Attorney General of the United States as the respondent. Yi v. Maugans, 24 F.3d at 507.
 
 
 [4]
 Anderson addressed a defendant's attempts to make a murder look like a suicide. The court stated that the attempts to cover up the crime were not probative of premeditation. 70 Cal.2d at 32, 73 Cal.Rptr. 550, 447 P.2d 942. Anderson did not address the exclusion of evidence of threats to show consciousness of guilt
 Therefore, Ortiz-Sandoval's claim under Myers v. Ylst, 897 F.2d 417, 421 (9th Cir.), cert. denied, 498 U.S. 879, 111 S.Ct. 212, 112 L.Ed.2d 172 (1990), that the trial court violated equal protection by arbitrarily failing to apply Anderson fails.
 
 
 [5]
 The trial court instructed the jury that the threat "may be considered by you as a circumstance tending to show a consciousness of guilt. However, such conduct is not sufficient, by itself, to prove guilt." The court also instructed the jury that it could not consider the evidence as proof of bad character or violent disposition