**Jose ORTIZ–SANDOVAL,
Petitioner–Appellant,**

v.

**Linda CLARKE, Warden, Respondent–
Appellee.**

No. 02–15291.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 2003.

Filed March 25, 2003.

Malcolm A. Heinicke, Munger, Tolles & Olson LLP, San Francisco, CA, for the petitioner-appellant.

Sharon G. Birenbaum, Deputy Attorney General, San Francisco, CA, for the respondent-appellee.

Before SILVERMAN, GOULD, Circuit Judges, and SEDWICK,* District Judge.

## OPINION

GOULD, Circuit Judge.

Petitioner Jose Ortiz–Sandoval (hereinafter "Sandoval") appeals the district court's denial of his habeas corpus petition, filed in the United States District Court for the Northern District of California on March 16, 1999. In his petition, Sandoval raises a Sixth Amendment ineffective assistance of counsel claim based on his trial counsel's failure to object to a warrantless entry into his personal residence. In exhaustion proceedings, the Santa Clara County Superior Court denied the petition on the merits, holding that the warrantless entry was justified by exigent circumstances or, in the alternative, that the evidence would have been admitted under the inevitable discovery doctrine. Both the California Court of Appeals and the California Supreme Court summarily denied the petition.

We address two issues on appeal: (1) whether this petition constitutes a second or successive petition that is barred from review; and (2) whether the state court denial of Sandoval's claim for ineffective assistance of counsel was contrary to or an unreasonable application of Supreme Court law. We have jurisdiction, 28 U.S.C. § 2253, and we deny the petition.

## I

On November 17, 1989, in the Superior Court for Santa Clara County, a jury found Sandoval guilty of first degree murder in the shooting death of Enrique Tello ("Tello"). The trial court sentenced Sandoval to 25 years to life in prison.

Ortiz–Sandoval previously lived with Tello in San Jose, California. On October 8, 1988, two or three months after Sandoval moved out, Sandoval was visiting Tello in San Jose and they had an argument about an old telephone bill. The argument escalated into a fist fight at about 11:00 p.m. Sandoval left the house, returned a few minutes later, and gained entry by breaking the window on the front door. He said that he had lost the keys to his truck. Tello's roommates, who were home during the earlier fight, helped Sandoval look for the keys. After he found his keys, Sandoval left the house. Tello and one of his roommates, Raul Chapina Gomez, were talking with their backs to the front door when a shot fired from outside the house struck Tello in the back and killed him. The shot was fired a few minutes after Sandoval left the house.

Police arrived at about 11:15 p.m., determined that Tello was dead, and spoke to Tello's roommates, who provided the police with a description of Sandoval and his truck. By 12:40 a.m. the police located Sandoval's truck outside a residence on Sanders Street in San Jose. After conducting a series of neighborhood stops at 1:27, 2:45, and 3 a.m., police were able to learn that there were two people living at the residence, one of whom matched the description of Sandoval. While the police were trying to determine Sandoval's residence, they cleared out the occupants of the attached residence, circled the apartment, searched the area, and observed the residence. Before obtaining or attempting to obtain a warrant, the police entered the residence after discovering a key in the

* The Honorable John W. Sedwick, Chief United States District Judge for the District of Alaska, sitting by designation.

front door. They found Sandoval and his brother asleep. Both men were immediately handcuffed and Sandoval was arrested.

Later, at the station house, Sandoval at first denied involvement in the shooting. But after being confronted with the discovery of the shotgun, Sandoval admitted to the shooting. He also admitted that he loaded his gun in the driveway outside Tello's residence.

At trial, Sandoval's court-appointed attorney moved to suppress the weapon and station house confession, arguing that the officers failed to comply with "knock and announce" requirements and that their search of the ceiling exceeded the scope of a justifiable protective sweep. She did not, however, base her objection on the warrantless entry. Her motion to suppress was denied and the weapon and station house confession were admitted at trial.

This is the second time that Sandoval's habeas petition comes before this court: On September 9, 1992, Sandoval filed a petition for writ of habeas corpus in the United States District Court for the Northern District of California. The district court initially found, in an order to show cause, that Sandoval had stated cognizable claims of ineffective assistance of counsel and due process violations. While petitioner did raise an ineffective assistance of counsel claim as to counsel's failure to preserve an objection to one of the officer's testimony, petitioner did not claim that he was denied effective assistance of counsel based on counsel's failure to object to warrantless entry. The district court denied the petition.

On appeal, in *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 896 (1996), we affirmed the district court's denial of the petition based on petitioner's articulated claim for ineffective assistance of counsel—that counsel failed to preserve an objection to one of the officer's testimony. Even though Sandoval had represented to the district court that he was not raising an ineffective assistance claim based on failure to object to warrantless entry, we remanded the case to district court for consideration of that ground after concluding that the district court had omitted the second basis for Sandoval's ineffective assistance claim. *Id.* at 896–97.

On remand, the district court dismissed the ineffective assistance claim without prejudice because Sandoval had not exhausted this claim in the state courts. After exhaustion proceedings, Sandoval filed this petition in the United States District Court for the Northern District of California on March 16, 1999. On January 16, 2002, the district court denied the petition.

## II

■ The Respondent Linda J. Clarke, Warden of the Correctional Training Facility in Soledad, (hereinafter "Respondent") argues that the district court should have dismissed this habeas petition as a successive petition.[1] Sandoval argues that this petition is not a successive petition but is rather a re-filing of the original petition.

■ Because 28 U.S.C. § 2244(b)[2] only bars a claim that "was not presented in a prior application," whether Sandoval's petition is barred under § 2244(b) turns on

---

1. Because Respondent is not asking for more relief than that granted by the district court, the panel may consider this issue even though there was no cross-appeal. *See In Re Weisman,* 5 F.3d 417, 419 n. 4 (9th Cir.1993).

2. The Anti–Terrorism and Effective Death Penalty Act ("AEDPA") prohibits second or successive habeas corpus petitions:

   (b)(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a

whether Sandoval presented the ineffective assistance claim in the first petition he filed in district court in 1992. We previously held that the ineffective assistance of counsel claim, based on failure to object to warrantless entry, was presented to the district court in the first petition. *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 896–97 (9th Cir.1996). Because the claim before us was presented in Sandoval's first petition and because the claim was not previously adjudicated on the merits, § 2244(b) does not bar the instant petition. *See Stewart v. Martinez–Villareal*, 523 U.S. 637, 644–45, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998) (holding that a claim previously presented in an original habeas petition, but not adjudicated on the merits, was not a "second or successive" petition under § 2244(b) even when other claims in the original petition had been adjudicated). We treat the petition in this case as a refiling of an earlier claim, not as a "second or successive" petition.[3]

## III

We next examine the merits of Sandoval's Sixth Amendment claim for ineffective assistance of counsel. Our review of Sandoval's ineffective assistance claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA only permits a federal court to grant habeas relief when a state court's ruling is "contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

▪ A state court's decision is "contrary to" federal law if the state court (1) "applies a rule that contradicts the governing law" set forth in Supreme Court case authority or (2) applies controlling law to a set of facts that are "materially indistinguishable" from a Supreme Court decision but nevertheless reaches a different result. *Lockyer v. Andrade*, —— U.S. ——, ——, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2002). *See also Shackleford v. Hubbard*, 234 F.3d 1072, 1077 (9th Cir.2000).

▪ A state court's decision is an "unreasonable application" of federal law if it is "objectively unreasonable," which "requires the state court decision to be more than incorrect or erroneous." *Lockyer*,

prior application shall be dismissed unless—
(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense....
(4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

28 U.S.C. § 2244(b).

3. When a district court is presented with a petition that contains both exhausted and unexhausted claims, the district court is required to dismiss the "mixed" petition without prejudice. *Rose v. Lundy*, 455 U.S. 509, 513–520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Calderon v. United States Dist. Ct.*, 107 F.3d 756, 760 (9th Cir.1997). After a "mixed" petition, previously dismissed for failure to exhaust state remedies, is presented to the district court a second time, the petition is not deemed "second or successive" but is considered a re-filing of the first petition. *In re Turner*, 101 F.3d 1323 (9th Cir.1997). The district court correctly noted that had it believed that the ineffective assistance claim with respect to warrantless entry was presented in the original petition, that petition should have been dismissed as a mixed petition under *Rose v. Lundy*.

123 S.Ct. at 1174. Thus, "an unreasonable application is different from an incorrect one." *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).

Sandoval argues that he was denied effective assistance of counsel when his trial counsel failed to move to suppress the shotgun found in his residence during the warrantless entry and the subsequent stationhouse confessions. When the Sixth Amendment ineffective assistance of counsel claim is rooted in defense counsel's failure to litigate a Fourth Amendment issue, as it is here, petitioner must show that (1) the overlooked motion to suppress would have been meritorious and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence. *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). *See also Strickland v. Washington,* 466 U.S. 668, 687–88, 691–92, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (To prevail on an ineffective assistance of counsel claim, defendant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) but for these deficiencies, a "reasonable probability" exists that the outcome of the trial would have been more favorable to him).

To prevail, Sandoval first must show that a motion to suppress based on warrantless entry would have been meritorious if brought in the first instance by trial counsel. The state court concluded that such a motion would have been denied because the warrantless entry was justified by "exigent circumstances." We need to decide whether this determination of "exigent circumstances" was either contrary to or an unreasonable application of clearly established federal law as determined by Supreme Court precedent.

We begin to assess this issue by recognizing the unassailable premise that warrantless arrests in the home are prohibited by the Fourth Amendment absent probable cause and exigent circumstances. *Payton v. New York,* 445 U.S. 573, 586–88, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), *quoted in Bailey v. Newland,* 263 F.3d 1022, 1033 (9th Cir.2001). We have determined that "[e]xigent circumstances are present when a reasonable person [would] believe that entry ... was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Bailey,* 263 F.3d at 1033 (internal quotation marks omitted).

Sandoval argues that there were no exigent circumstances, relying primarily on the fact that police located Sandoval's vehicle outside of his residence at about 12:40 a.m. but did not enter the residence until about 3:40 a.m. The length of time that elapsed, Sandoval argues, shows that the officers had ample time to obtain a warrant and that entry was not necessary to prevent harm to officers or other persons.

On the one hand, exigent circumstances may exist in spite of such a delay. *See United States v. Standridge,* 810 F.2d 1034, 1037 (11th Cir.1987) (recognizing that "[e]xigent circumstances do not necessarily involve 'hot pursuit' of a fleeing criminal"); *United States v. McEachin,* 670 F.2d 1139, 1145 (D.C.Cir.1981) (concluding that delay did not undercut finding of exigent circumstances). Indeed, the length of time between when the officers located Sandoval's vehicle and when they entered the residence is not necessarily

indicative of the immediacy with which the officers acted. As soon as the officers found Sandoval's truck they began conducting car stops to ascertain whether someone with Sandoval's description lived at the residence where the truck was parked. The final car stop was made at about 3:00 a.m., and the officers made the decision to enter the residence at 3:40 a.m.[4] Even in the absence of hot pursuit, the gravity of the crime and likelihood that the suspect is armed may be considered when weighing the risk of danger. *Minnesota v. Olson,* 495 U.S. 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). *See also Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (holding that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense"). Here, the underlying offense is murder, and the police knew that the murder weapon had yet to be recovered, thus increasing the possibility that Sandoval was armed. These considerations support the state court's determination that exigent circumstances excused the warrantless entry.

On the other hand, after the officers identified Sandoval's truck outside the residence, the officers set up surveillance of the residence and removed occupants of the attached residence. As Sandoval argues, the uneventful surveillance could suggest that neither the officers nor other persons would have been in danger had the officers waited for a warrant. The record may also support inference that the police, who early on removed occupants from the main house, knew the petitioner was in his segment of the home long before the entry was made, and perhaps police were simply awaiting reinforcements or more information. The petitioner's argument is strengthened by the salient fact that the warrantless entry was of a person's home. These considerations are troubling and argue against the state court's determination of exigent circumstances.

In assessing the issue of exigent circumstances, we must keep in mind that this is not a direct appeal and that we are constrained by the AEDPA standard. Most importantly, there is no authority showing the state court's decision was clearly contrary to Supreme Court law.

Sandoval relies heavily on *United States v. Gooch,* in which we found no exigent circumstances when police conducted a warrantless entry and search of a tent at a campground, arriving a few hours after the incident. 6 F.3d 673, 679–80 (9th Cir. 1993). In Gooch, the police were responding to a complaint that a man had been shot at (but not injured) at the campground. *Id.* at 676. By the time the police arrived, it was daylight, the campground was quiet, and the officers learned that the defendant was asleep in his tent. *Id. Gooch* provides limited support to San-

---

**4.** The record is not clear on the details of what time the officers confirmed where Sandoval lived and at what point they could have sought a warrant. At oral argument the panel *sua sponte* raised the idea of remanding this case for an evidentiary hearing to further clarify the record. Whether a district court may hold an evidentiary hearing is governed by AEDPA, 28 U.S.C. § 2254(e)(2). Because Sandoval did not ask for an evidentiary hearing in state court, a federal court may hold an evidentiary hearing only if (1) the claim relies on a new rule of law or previously undiscov-

erable facts, *and* (2) the facts sought to be discovered would establish by clear and convincing evidence that the petitioner would not have been convicted but for constitutional error. 28 U.S.C. § 2254(e)(2). *See also Williams v. Taylor,* 529 U.S. 420, 436–37, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (the constraints of § 2254(e)(2) will apply unless the petitioner "at a minimum, [sought] an evidentiary hearing in state court."). Sandoval does not meet the requirements of § 2254(e)(2) and we cannot therefore remand for evidentiary hearing.

doval's argument because there are key differences. First, no one had been injured in *Gooch*, whereas Sandoval was suspected of a murder that occurred about four hours before entry. Second, the officers responding in this case did not know whether Sandoval was asleep in his residence; if awake, then the potential for escape or for his armed resistance could justify more immediate action. Third, while the officers in *Gooch* might know whether someone was awake or destroying evidence in a tent, officers standing outside Sandoval's residence could not ascertain what was taking place inside the residence. Finally, even if *Gooch* were viewed as a strong analogy, which it is not in our view, it is in any event our precedent and not precedent of the United States Supreme Court.

Our decision in *United States v. Duran–Orozco*, 192 F.3d 1277 (9th Cir.1999) also does not show that the state court's decision is contrary to Supreme Court law. In *Duran–Orozco*, the defendants were being pursued for trafficking marijuana. 192 F.3d at 1279. After the agents saw marijuana when they peered through the back window, they waited for a warrant to make the arrests and did not urge exigent circumstances excused lack of warrant. *Id.* at 1280. At trial, the agents conceded they could have guarded the perimeter. *Id.* at 1281. The government in that case did not challenge the need for a warrant before entering a home. In contrast, Sandoval was suspected of murder, not merely possession of marijuana, and the officers in Sandoval's case testified that they believed entry was necessary to avoid danger to the officers and others in the public.

To the extent that *Gooch* and *Duran–Orozco* support Sandoval's claim, that support is not enough for Sandoval to prevail on a habeas petition. Because AEDPA limits habeas relief to state decisions that offend "clearly established" federal law as

set by the Supreme Court, a state court decision may not be overturned simply because of a conflict with circuit law. *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir.2000).

Here, there are substantial arguments presented both for reasonableness and for unreasonableness of the state court's application of the law of exigent circumstances. Were this case presented on direct appeal, a close question would be before us. We are not at liberty, however, to decide the issue of exigent circumstances in this case as if it had been presented on direct appeal. *See Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly."). Under the circumstances, we cannot say that the state court's decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.

**AFFIRMED.**