**Shawn Lavette WILLIAMS, Petitioner,**

v.

**Guy HALL, Respondent.**

**Civil No. 01–812–AA.**

United States District Court,
D. Oregon.

Aug. 18, 2009.

Kristina Hellman, Assistant Federal Public Defender, Portland, OR, Attorney for petitioner.

John R. Kroger, Attorney General, Lester R. Huntsinger, Senior Assistant Attorney General, Department of Justice, Salem, OR, Attorneys for respondent.

## OPINION AND ORDER

AIKEN, Judge.

On June 15, 2009, this Court ordered an evidentiary hearing to be held in this case on September 10, 2009. Petitioner now moves for an order permitting juror interviews prior to that hearing. Petitioner's request is granted.

## BACKGROUND

Petitioner Shawn Williams challenges his 1992 Multnomah County convictions and sentences for murder and attempted murder. The charges against petitioner were based on the State's assertion that petitioner, in an attempt to intimidate a witness in a separate case against him, shot into the witness' house, killing her 14–month–old child. Petitioner alleges that news coverage was extensive and focused heavily on the young victim, and despite the media coverage, trial counsel failed to move for a change of venue. In addition, petitioner alleges that the prospective jury pool included only two African American members. One, a distant relative of petitioner, was removed for cause; and the second individual was stricken by the prosecutor with a peremptory challenge. Petitioner, an African–American man, was tried and convicted by an all-white jury. Trial counsel failed to challenge the racial composition of the jury under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Petitioner raised an ineffective assistance of counsel claim based on trial counsel's failure to move for a change of venue or raise a *Batson* challenge in his *pro se* Petition for Post Conviction Relief. The court granted the State's motion to strike this claim, as well as others, finding that the claim did not comply with Oregon state pleading requirements. Although represented by counsel, petitioner chose not to file an amended petition. At trial, petitioner's counsel moved orally to amend the petition to reinsert the venue and *Batson* claims, however the motion was denied as untimely and the case went to trial on the remaining claims. The trial court denied relief, with the Oregon appellate courts affirming the judgment.

Petitioner's Second Amended Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, alleges ineffective assistance of counsel for failure to raise the venue and *Batson* claims.[1] On February 20, 2009, this Court determined the claims were not procedurally defaulted and would therefore be heard on the merits. On June 15, 2009, the Court granted petitioner's request for an evidentiary hearing. Petitioner now moves for an order permitting him to interview jurors in his case prior to the evidentiary hearing, arguing that such discovery is necessary to develop evidence supporting his *Batson* and venue claims.

## STANDARDS

■ Habeas petitioners are not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). However, "[w]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris*

---

1. Petitioner also included a third claim as a basis for relief, alleging that the trial court erred in imposing upward departure and con-secutive sentences based on judicial fact-finding. This claim has been withdrawn.

*v. Nelson,* 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Habeas Rule 6(a) codifies this duty and is meant to be "consistent" with *Harris. Bracy,* 520 U.S. at 909, 117 S.Ct. 1793; Advisory Committee's Note on Habeas Corpus Rule 6, 28 U.S.C., p. 479. The rule reads: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery," Rules Governing § 2254 Cases, Rule 6(a), 28 U.S.C. foll. § 2254.

■ Discovery is typically limited in habeas proceedings, as "[i]t is clear that there was no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions . . . of [the Federal Rules of Civil Procedure]." *Harris,* 394 U.S. at 296, 89 S.Ct. 1082. Rule 6(a) does not sanction "fishing expeditions"; discovery will not be allowed so that the petitioner can "explore [his] case" looking for new constitutional claims. *Rich v. Calderon,* 187 F.3d 1064, 1067 (9th Cir.1999). The decision whether to grant a request for discovery under Habeas Rule 6(a) is within the discretion of the district court. *Brewer v. Lewis,* 989 F.2d 1021, 1026 n. 3 (9th Cir.1993). In addition to the general requirement of good cause before the court will allow discovery in a habeas proceeding, the local rules require petitioners in this Court to obtain authorization before initiating contact with any juror concerning "any case which that juror was sworn to try." D. Or. R. 48.3.

■ A "good cause" analysis requires the reviewing court to identify the "essential elements" of the underlying substantive claim, and determine whether petitioner's allegations, if proven, would satisfy those elements and show the violation of a constitutional right. *Bracy,* 520 U.S. at 904, 117 S.Ct. 1793. The court should allow discovery when it is "essential" to the full development of a petitioner's claim. *Pham v. Terhune,* 400 F.3d 740, 743 (9th Cir.2005). Discovery is essential when it "may well" uncover "favorable, material information" that would tend to support the claim. *Id.*

The essential elements of petitioner's ineffective assistance of counsel claims are delineated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* a petitioner must first show that trial counsel's performance "fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688, 104 S.Ct. 2052. Second, the petitioner must demonstrate that, absent counsel's unprofessional errors, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Where a petitioner alleges counsel was ineffective for failing to file a motion, an essential part of the *Strickland* claim is proving that the motion would have been meritorious. *See Ortiz–Sandoval v. Clarke,* 323 F.3d 1165, 1170 (9th Cir.2003).

## DISCUSSION

Petitioner argues that, because the claims at the evidentiary hearing center around "issues with the jury, including questions as to the jury's racial composition and the impact of extensive pretrial publicity," he should be allowed to interview both the jurors who were seated in his case and the persons who were excused due to cause or peremptory challenges. Petr.'s Br. 1. He contends that he "cannot develop essential facts" without these interviews. *Id.* In particular, petitioner seeks to ask jurors to "provide information in an attempt to recreate pertinent parts of the voir dire process," which was not transcribed in this case. Petr.'s Reply Br. 5.

*I. Juror Interviews Under the Federal Rules of Evidence*

■ Respondent argues that Federal Rule of Evidence 606(b) prohibits juror

testimony in this case.[2] I disagree. Under that rule, "jurors may not be questioned about the deliberative process or subjective effects of extraneous information, nor can such information be considered by the trial or appellate courts." *United States v. Bagnariol,* 665 F.2d 877, 884–85 (9th Cir.1981), *cert. denied* 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Petitioner responds that the federal rule does not apply in his case because the rule applies only where a defendant seeks to "inqui[re] into the validity of a verdict." Fed.R.Evid. 606(b).

It is unnecessary to determine whether petitioner's challenge in this case constitutes a challenge to the verdict, because the rule itself recognizes that a juror "may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." *Id., see also Bagnariol,* 665 F.2d at 884–85 (jurors may testify "regarding extraneous prejudicial information or improper outside influences" without disclosing information about "the deliberative process or the subjective effects of extraneous information.") Petitioner seeks to question jurors about the racial composition of the jury and jury pool, the voir dire process, and the objective existence of impermissible outside in-

fluences or extraneous information. Even if the federal rule applies, these questions fall under the exception and are permissible.[3] Petitioner's request to interview jurors is not barred by the Federal Rules of Evidence. Therefore, I will proceed to a good cause analysis of petitioner's ineffective assistance of counsel claims.

## II. Ineffective Assistance of Counsel Claims

### A. Batson Claim

 In order to show trial counsel was ineffective for failing to raise a *Batson* claim, petitioner must show (1) counsel's failure to raise a *Batson* challenge was objectively unreasonable, and (2) counsel could have made a viable *Batson* challenge to the composition of the jury in petitioner's case. Because I find petitioner's allegations state a prima facie case for a *Batson* claim, petitioner's request for additional discovery on this claim is granted.

In *Batson v. Kentucky,* the Supreme Court held that "[p]urposeful racial discrimination in the selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." 475 U.S. at 86, 106 S.Ct. 938. A *Batson* analysis proceeds in three steps. First, defendant "must establish a prima

---

**2.** Respondent also argues that petitioner should not be allowed any contact with the jury because the Uniform Trial Court Rules of Oregon allow such contact only where there is a reasonable ground to believe (1) "there has been a mistake in the announcing or recording of a verdict" or (2) "a juror or the jury has been guilty of fraud or misconduct." Or. Unif. Tr. Ct. R. 3.120. However, the Ninth Circuit has clearly held that the federal rule rather than state controls on habeas review with respect to communication with jurors. Application of a state rule is error. *McDowell v. Calderon,* 107 F.3d 1351, 1366 (9th Cir.), *vacated in part on other grounds,* 130 F.3d 833 (9th Cir.1997) (en banc).

**3.** Respondent further argues that if the interviews are permitted, they should take place in the presence of the court at the evidentiary hearing. Respt.'s Br. 1. I disagree and find that it would be an inefficient use of the court's time to conduct these interviews under direct court supervision. Petitioner's brief demonstrates that petitioner understands which sorts of questions are permissible, and in any case, any testimony about deliberations or the subjective effect of information on the deliberative process is inadmissible in this Court.

facie case of discrimination." *Paulino v. Harrison,* 542 F.3d 692, 699 (9th Cir.2008). To establish a prima facie case, defendant must show "(1) the defendant is a member of a cognizable group; (2) the prosecution has removed members of such a group; and (3) circumstances raise an 'inference' that the challenges were motivated by race." *Fernandez v. Roe,* 286 F.3d 1073, 1077 (9th Cir.2002). Once a defendant has made his prima facie showing, the burden shifts to the prosecution to provide a race-neutral justification for striking the juror. *Paulino,* 542 F.3d at 699. The burden then returns to defendant to rebut the prosecution's proffered reason, showing purposeful discrimination. *Id.*

Petitioner, an African American, alleges there were two African Americans in the jury pool. One of these potential jurors was struck because he was a distant relative of petitioner's; the other individual was dismissed after the prosecution used a peremptory challenge. As a result of the use of this peremptory challenge, petitioner was tried and convicted by an all-white jury. The burden is on petitioner to make a prima facie showing, requiring him to present evidence that the only remaining African American in the jury pool was indeed struck via a peremptory challenge by the prosecution. The burden then returns to petitioner to rebut any non-race-based reason for the challenge proffered by the prosecution. Evidence regarding the racial composition of the jury pool and jury, as well as jurors' recollections of the voir dire process, is "essential" to the development of petitioner's claim. I therefore find that petitioner has shown good cause for additional discovery on his *Batson* claim.

### B. Venue Claim

■ To prevail on his venue claim, petitioner must show, at a minimum, that (1) counsel's failure to move for a change of venue was objectively unreasonable; and (2) there is a reasonable probability the trial court would have granted the motion. This, in turn, requires petitioner to show actual or presumed prejudice by the jurors. *See Ainsworth v. Calderon,* 138 F.3d 787, 795 (9th Cir.) (petitioner may show trial court erred in denying motion for change of venue by demonstrating actual or presumed prejudice), as *amended* 152 F.3d 1223 (1998); *accord Tafoya v. Tansy,* 9 Fed.Appx. 862, 871 (10th Cir.2001) (proving trial court would likely have granted motion for change of venue requires showing actual or presumed prejudice); *Meeks v. Moore,* 216 F.3d 951, 961 (11th Cir.2000) (same), *cert. denied,* 531 U.S. 1159, 121 S.Ct. 1114, 148 L.Ed.2d 983 (2001). Because juror interviews are essential to the development of petitioner's claim of actual prejudice, I find petitioner has shown good cause for additional discovery on his venue claim.

Petitioner's proposed juror interviews would bear only on the question of actual prejudice.[4] To show actual prejudice, petitioner must show that at least one juror in his case demonstrated "actual partiality or hostility that could not be laid aside." *Harris v. Pulley,* 885 F.2d 1354, 1360 (9th Cir.1988). Petitioner may make this showing by proving that a "sufficient number of the jury panel 'had such fixed opinions that they could not judge impartially the guilt of the defendant' so that it is clear that a trial before that panel would be inherently

---

4. Presumed prejudice exists where "the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Ainsworth,* 138 F.3d at 795. A presumed prejudice analysis requires the reviewing court to "conduct an independent review of news reports about the case." *Daniels v. Woodford,* 428 F.3d 1181, 1210 (9th Cir.2005). For this reason, juror testimony about personal exposure to news items is not evidence that supports a conclusion of presumed prejudice.

prejudicial." *United States v. Collins*, 109 F.3d 1413, 1416 (9th Cir.1997) (quoting *Harris v. Pulley*, 885 F.2d 1354, 1364 (9th Cir.1988), *cert. denied*, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990)).

An actual prejudice analysis typically focuses on an examination of the voir dire process. *See, e.g., Murphy v. Florida*, 421 U.S. 794, 803, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975) (dismissal of 20 of 78 potential jurors because they expressed an opinion as to petitioner's guilt did not indicate a community bias so pervasive as to constitute actual prejudice); *Irvin v. Dowd*, 366 U.S. 717, 727, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (actual prejudice was present where 90% of potential jurors "were inclined to believe the defendant was guilty" and trial court dismissed 268 of 430 of potential jurors based on those jurors' inability to put preconceptions aside and render an impartial verdict). Here, voir dire was not transcribed and all record of the process has been destroyed. Juror interviews are therefore "essential" for petitioner to develop evidence supporting his claim of actual prejudice due to pretrial publicity, and petitioner has shown good cause for additional discovery on his venue claim.

### III. Limitations on Discovery

Petitioner's reply brief highlights the practical considerations implicit in a request to interview members of a jury pool seventeen years after the trial. As petitioner points out, simply finding the persons on the list will be a challenge after so much time has passed. In addition, after nearly two decades, it is reasonable to assume that jurors' recollections of the events surrounding the trial, and of the voir dire process, may be limited. Noting that a district court has discretion to limit the scope of discovery in habeas cases, I am mindful of these challenges, and of the resources that would be required to overcome them, in ruling on petitioner's request.

While I agree that juror interviews are "essential" to the development of petitioner's claims in this case, I am not prepared to issue a 'blank discovery check' to petitioner. I therefore order petitioner to submit to the court a proposed discovery plan with respect to juror interviews. This plan should include: (1) a timeline, including a schedule of periodic summary updates to the court, (2) proposed search and interview methods, and (3) a dollar amount which petitioner may not exceed in conducting the search and interviews without further court approval. Upon court review and approval of this plan, petitioner will then be granted leave to proceed with discovery within the limits of the plan.

### CONCLUSION

Petitioner's motion to interview jurors (doc. 130) is granted. Petitioner is ordered to submit a proposed discovery plan for juror interviews by September 11, 2009. Further, the hearing scheduled on September 10, 2009 at 9:00 a.m. is stricken and will be reset, if necessary, at the conclusion of discovery.

IT IS SO ORDERED.