Darrell Keith RICH, Petitioner–Appellant,

v.

Arthur CALDERON, Warden, Respondent–Appellee.

No. 97–99007.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 16, 1998.

Filed March 25, 1999.

Amended Aug. 13, 1999.

Clyde M. Blackmon and James S. Thomson, Blackmon & Snellings, Sacramento, California, for the petitioner-appellant.

Carlos A. Martinez, Deputy Attorney General, Sacramento, California, for the respondent-appellee.

Before: PREGERSON, KLEINFELD and HAWKINS, Circuit Judges.

### ORDER

The Opinion filed March 25, 1999 and appearing at 170 F.3d 1236 (9th Cir.1999), is amended as follows:

Page 1239, section "2.a."—delete section and substitute the following in its place:

*a. Pre–Indictment Publicity.*

*Any claim that Rich's indictment was tainted by pretrial publicity was waived when Rich failed to challenge the impartiality of the jury venire following a change in venue, the presumptively impartial trial jury having considered the charges and returned its verdict.* See *United States v. Reed,* 726 F.2d 570, 578 (9th Cir.1984). *Even if we were to accept Rich's argument that* Reed *has been effectively overruled by* Vasquez v. Hillery, *474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), a decision which was part of the "legal landscape" when*

Rich's conviction became final, *see O'Dell v. Netherland*, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (discussing finality of *Teague* purposes), such an interpretation of *Hillery* would constitute a "new rule" and be subject to the bar of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Hillery* has been understood exclusively as stating the rule that racially discriminatory grand jury selection is a structural error that cannot be cured by a fair trial verdict. *See, e.g., Harris v. Warden*, 152 F.3d 430, 435 (5th Cir.1998); *United States v. Wiles*, 102 F.3d 1043, 1056 (10th Cir.1996); *Tyson v. Trigg*, 50 F.3d 436, 442 (7th Cir.1995). Rich's reading of *Hillery* for the broader proposition that any source of bias, including prejudicial publicity, can create structural error is not a result that a trial court would have seen as "dictated" by *Hillery* at the time of his trial, or today. *See Teague*, 489 U.S. at 301, 109 S.Ct. 1060.

Pages 1240–1241, section "3.d."delete section and substitute the following in its place:

#### d. *Prosecutorial Misconduct*

Amongst Rich's multiple claims of prosecutorial misconduct, only his claim that the prosecutor at his trial engaged in misconduct during penalty phase final argument by referring to the potential for future acts of violence on Rich's part and to a photograph showing one of his tattoos is reviewable by this court. We may not review his six other prosecutorial misconduct claims because Rich procedurally defaulted by failing to make contemporaneous objections, and the California court consequently invoked a procedural bar to their consideration, the validity of which Rich has failed to overcome. *See Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

This claim is without merit. The issue of future danger to others is an appropriate subject of discussion at sentencing. In light of Rich's braggadocio comments to his friends ("Once you've killed, you can always kill again."), the arguments constituted appropriate and fair comment on an issue properly before the jury, rather than newly introduced evidence that had been kept from Rich. *See Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir.1995). While the reference to the unadmitted photo may have been improper, no prejudice occurred—there was never any dispute that Rich is tattooed. Prosecutorial misconduct did not occur here.

With these amendments, the panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no judge of the court has called for a vote to rehear this matter en banc. Fed. R.App. P. 35(a).

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

### OPINION

MICHAEL DALY HAWKINS, Circuit Judge.

Petitioner Darrell Keith Rich ("Rich"), facing the death penalty following his 1980 convictions for a series of sexual attacks and murders, appeals the denial of his habeas corpus petition. Rich's claims include the district court's denial of discovery and an evidentiary hearing and various errors in the handling of the criminal charges against him in state court—among them pre-indictment and pre-trial publicity, the makeup of the grand jury returning his indictment, the instructions given his trial jury, prejudice from an "economically conflicted" defense counsel, prosecutorial misconduct, and his shackling during trial. Rich also contends that he lacked the necessary mental competence to stand trial. Because each of these claims lacks merit, we affirm.

## FACTS

The investigation of the crimes leading to Rich's arrest and trial produced substantial public notice in the community where those crimes occurred and understandably so. To even the most hardened eye, the crimes were almost unimaginably brutal—savage attacks on defenseless young women, all sexually ravaged. Five were also murdered: two bludgeoned to death, a third shot in the face and a fourth—an 11 year old girl—thrown off a 100 foot bridge to her death. Five other women, ranging in age from 14 to 25, managed to survive; four unhesitatingly identified Rich as their attacker.

## PRIOR PROCEEDINGS

Following a change of venue from Shasta County where he was indicted, Rich was brought to trial in Yolo County California. Provided with an investigator as well as access to a battery of psychological experts, Rich's court-appointed counsel put on a detailed defense, aimed at showing that Rich had acted under the compulsion of a mental defect that rendered him incapable of understanding the gravity of his deeds. Some forty-four witnesses, including childhood friends, teachers and neighbors, provided the jury with a detailed portrait of Rich's formative years. Three state-paid mental health experts, two psychologists and one psychiatrist testified in support of the defense theory.

The jury ultimately found Rich guilty of three counts of first degree murder, one count of second degree murder, and a series of sexual assault crimes. The jury concluded that Rich was sane and found special circumstances in connection with the first degree murder counts. The jury recommended Life Without Possibility of Parole on the second-degree count and death on the three first-degree counts. After the trial court declined to modify the jury's recommendation, Rich pursued a direct appeal in the California system. The California Supreme Court unanimously affirmed Rich's convictions and sentence. *See People v. Rich,* 45 Cal.3d 1036, 248 Cal.Rptr. 510, 755 P.2d 960 (1988), *cert.* *denied,* 488 U.S. 1051, 109 S.Ct. 884, 102 L.Ed.2d 1006 (1989). Rich's habeas petition was filed below in 1990 and reached this court in 1997.

## ANALYSIS

We examine Rich's habeas claims against the following backdrop. Rich's habeas petition, brought ten years after his conviction and nearly two years after that conviction was final, was initially found to be rife with claims that had not been exhausted in state court. After being given a four-year opportunity to do so, Rich asked for and was given an opportunity to amend his claims and provide a discovery plan. When he filed his amended habeas petition, it still contained unexhausted state claims.

1. *Denial of Discovery, Evidentiary Hearing.*

■ Rich contends he was denied the opportunity to discover and present evidence supporting his claims. In fact, the Magistrate Judge established an entirely reasonable process to deal with the claims for which Rich sought discovery and a hearing. The process required Rich to identify which of his claims remained unexhausted, which actually presented federal questions, and those as to which habeas relief might be available if favorable evidence were developed. Despite being given more than five months to investigate and prepare as well as a full day of argument to identify claims that might colorably entitle him to relief, Rich was unable to do so.

■ Habeas is an important safeguard whose goal is to correct real and obvious wrongs. It was never meant to be a fishing expedition for habeas petitioners to "explore their case in search of its existence." *Calderon v. U.S.D.C. (Nicolaus),* 98 F.3d 1102, 1106 (9th Cir.1996) (quoting *Aubut v. Maine,* 431 F.2d 688, 689 (1st Cir.1970)). An evidentiary hearing on a claim is required where it is clear from the

petition that: (1) the allegations, if established, would entitle the petitioner to relief; and (2) the state court trier of fact has not reliably found the relevant facts. *See, Hendricks v. Vasquez,* 974 F.2d 1099, 1103 (9th Cir.1992). Nothing in Rich's submissions below suggests he could meet either requirement.

 A habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant. *Bracy v. Gramley,* 520 U.S. 899, 903–05, 117 S.Ct. 1793, 1796–97, 138 L.Ed.2d 97 (1997). Rather, discovery is available only in the discretion of the court and for good cause shown. *See* Rules Governing Section 2254 Cases, Rule 6(a) 28 U.S.C. foll. § 2254. This is consistent with our caselaw that there is no general right to discovery in habeas proceedings. *See Campbell v. Blodgett,* 982 F.2d 1356, 1358 (9th Cir. 1993). Other decisions cited by Rich do not establish a contrary proposition. *Crandell v. Bunnell,* 25 F.3d 754 (9th Cir. 1994), *Jeffries v. Blodgett,* 5 F.3d 1180 (9th Cir.1993), and *McKenzie v. Risley,* 915 F.2d 1396 (9th Cir.1990) all involve petitioners who presented evidence in support of claims that colorably entitled them to relief. None of Rich's claims meet this standard.

2. *Pre–Trial Error.*
 a. *Pre–Indictment Publicity.*

 Any claim that Rich's indictment was tainted by pretrial publicity was waived when Rich failed to challenge the impartiality of the jury venire following a change in venue, the presumptively impartial trial jury having considered the charges and returned its verdict. *See United States v. Reed,* 726 F.2d 570, 578 (9th Cir.1984). Even if we were to accept Rich's argument that *Reed* has been effectively overruled by *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), a decision which was part of the "legal landscape" when Rich's conviction became final, *see O'Dell v. Netherland,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (discussing finality of *Teague* pur-

poses), such an interpretation of *Hillery* would constitute a "new rule" and be subject to the bar of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Hillery* has been understood exclusively as stating the rule that racially discriminatory grand jury selection is a structural error that cannot be cured by a fair trial verdict. *See, e.g., Harris v. Warden,* 152 F.3d 430, 435 (5th Cir.1998); *United States v. Wiles,* 102 F.3d 1043, 1056 (10th Cir.1996); *Tyson v. Trigg,* 50 F.3d 436, 442 (7th Cir.1995). Rich's reading of *Hillery* for the broader proposition that any source of bias, including prejudicial publicity, can create structural error is not a result that a trial court would have seen as "dictated" by *Hillery* at the time of his trial, or today. *See Teague,* 489 U.S. at 301, 109 S.Ct. 1060.

 b. *Grand Jury Selection.*

 Rich broadly complains of the process by which the grand jury that indicted him was selected and composed. The district court properly limited Rich's equal protection claim under *Teague v. Lane* to the exclusion of Native Americans. Rich's claim fails because he did not set forth a prima facie case of systematic exclusion of members of that group. The 1980 Census for Shasta County showed that the overall population consisted of 2.7% "American Indian, Eskimo, and Aleut." A survey of the cases show that the exclusion of a group constituting 7.7% or less of the total population is, standing alone, generally insufficient to establish a prima facie case of systematic exclusion. *See United States v. Cannady,* 54 F.3d 544, 548 (9th Cir.1995); *United States v. Suttiswad,* 696 F.2d 645, 649 (9th Cir. 1982); *United States v. Potter,* 552 F.2d 901, 906 (9th Cir.1977). There was no constitutional error in the selection and composition of the grand jury that returned Rich's indictment.

3. *Trial Error.*
 a. *Jury Instructions.*

 Rich claims that the trial court misled the jury by failing to instruct, after the

jury had reached a temporary impasse, that a failure to reach agreement on penalty would result in a life sentence. This argument fails because such an instruction would have been contrary to California Penal Code section 190.4(b) and inconsistent with established caselaw that a trial court need not inform a jury of the consequences of deadlock. *See People v. Memro,* 11 Cal.4th 786, 882, 47 Cal.Rptr.2d 219, 905 P.2d 1305, 1359 (Cal.1995). Intermediate California appellate decisions suggesting a contrary rule fly in the face of our recognition of the California Supreme Court as the "final expositor of California law." *Bonin v. Calderon,* 59 F.3d 815, 841 (9th Cir.1995). There is no error, constitutional or otherwise, in the failure to give the requested instruction.

### b. *Defense Counsel Conflict of Interest.*

■ Rich claims that his trial counsel labored under an "economic conflict" of interest because of pressures put on him by Shasta County funding authorities. The result of these pressures, Rich claims, was twofold: (1) his counsel was "chilled" from obtaining experts "untainted" by a confession that was ultimately suppressed; and (2) an investigator was not hired to look into jailhouse conditions and their impact on Rich.

Even under the deferential standard the district court applied to this claim, it fails because Rich cannot show that: (1) his counsel actively represented conflicting interests; and (2) an actual conflict of interest adversely affected counsel's performance. *See id.* at 825. Rich's failure to make out such a prima facie case relieved the district court of any responsibility to hold an evidentiary hearing on the claim. *See Williams v. Calderon,* 52 F.3d 1465, 1484 (9th Cir.1995).

■ A claim that a conflict produced adverse impact is not made out by simply claiming such; it must be an impact that significantly worsens the client's representation. *See United States v. Mett,* 65 F.3d 1531, 1535–36 (9th Cir.1995). Rich's trial counsel provided an affidavit discussing the financial pressures he perceived at the time, which does not even suggest that he gave in to those pressures in any way that produced demonstrable harm of any kind to Rich's defense.

The finding below that Rich was not denied the effective assistance of counsel at trial is supported by substantial evidence.

### c. *Shackling.*

■ Asked at argument to identify the most serious error affecting Rich's trial, his habeas counsel chose this one. The underlying facts are straightforward and not in essential dispute. Rich was in fact shackled with ankle chains during the course of his trial. The shackles were behind a curtain or "skirt" placed around the defense table to insure that they were not visible to the jury. He was not handcuffed and was able to take notes and communicate freely with his defense counsel. The record is devoid of any suggestion that the skirt was not effective in screening Rich's shackles from the jury's view. Neither the trial judge, who insisted on the shackling, nor Rich's defense counsel, who objected to it, made any comment about the jury being able to see the shackles in the courtroom during the trial. Our caselaw is clear: where care is taken to ensure that a defendant's shackling is not visible to the jury in the courtroom, no error results. *See United States v. Collins,* 109 F.3d 1413, 1418 (9th Cir.1997); *Castillo v. Stainer,* 983 F.2d 145, 148 (9th Cir.1992), *as amended* 997 F.2d 669 (9th Cir.1993) (no constitutional error from brief jury viewing of shackled defendant outside the courtroom). No constitutional error resulted from the shackling methods employed here.

### d. *Prosecutorial Misconduct*

■ Amongst Rich's multiple claims of prosecutorial misconduct, only his claim that the prosecutor at his trial engaged in misconduct during penalty phase final argument by referring to the potential for

future acts of violence on Rich's part and to a photograph showing one of his tattoos is reviewable by this court. We may not review his six other prosecutorial misconduct claims because Rich procedurally defaulted by failing to make contemporaneous objections, and the California court consequently invoked a procedural bar to their consideration, the validity of which Rich has failed to overcome. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

 This claim is without merit. The issue of future danger to others is an appropriate subject of discussion at sentencing. In light of Rich's braggadocio comments to his friends ("Once you've killed, you can always kill again."), the arguments constituted appropriate and fair comment on an issue properly before the jury, rather than newly introduced evidence that had been kept from Rich. *See Duckett v. Godinez,* 67 F.3d 734, 742 (9th Cir.1995). While the reference to the unadmitted photo may have been improper, no prejudice occurred—there was never any dispute that Rich is tattooed. Prosecutorial misconduct did not occur here.

e. *Mental Competence.*

Rich understandably concentrates on the testimony of the mental health experts he called to the stand. The Magistrate Judge, however, went carefully through the testimony of all mental health experts and could not find a "real and substantial doubt" concerning Rich's competency to stand trial. *See Boag v. Raines,* 769 F.2d 1341, 1343 (9th Cir.1985). Rich was mentally competent to stand trial and no error occurred in the process by which the trial court so determined.

Having found no constitutional error, we affirm the judgment of the district court.

AFFIRMED.