**Donald SHERMAN, Petitioner,**

v.

**E.K. MCDANIEL, et al., Respondents.**

**No. CV–S–02–1349–LRH LRL.**

United States District Court,
D. Nevada.

Aug. 30, 2004.

Michael Pescetta, Federal Public Defender, Las Vegas, NV, for Petitioner.

John Warwick, Carson City, NV, for Respondent.

## ORDER

HICKS, District Judge.

### I. *Introduction and Procedural History* [1]

The petitioner in this capital habeas action has filed a motion for leave to conduct discovery. Petitioner does not make any showing that he has exhausted any of the claims on which he seeks discovery, or that those claims are not procedurally defaulted, and petitioner concedes that he did not pursued any discovery in state court. The Court will, therefore, deny the majority of petitioner's motion, but will grant petitioner leave to conduct limited discovery to obtain certain records relating only to himself. As to that allowed discovery, petitioner will be required to revise his proposed subpoenas.

In 1994, petitioner was convicted in Nevada's Eighth Judicial District Court, following a jury trial, of first-degree murder, robbery, and burglary, and he was sentenced to death. His conviction and sentence were affirmed on direct appeal by the Nevada Supreme Court. *See Sherman v. State,* 114 Nev. 998, 965 P.2d 903 (1998).

In 1999, petitioner filed a petition for a writ of habeas corpus in the state district

---

1. The procedural history set forth in this section of this order is derived from petitioner's discovery motion (docket # 19). The parties have not provided the Court with sufficient portions of the state-court record to allow the Court to verify this history.

court. "State post-conviction counsel did not seek to conduct discovery to investigate any issues outside of the record on direct appeal." Motion for Leave to Conduct Discovery (docket # 19), p. 3, lines 7–8. The state district court denied the petition on December 8, 2000. The Nevada Supreme Court affirmed on August 5, 2002.

Petitioner filed this—his first—federal habeas corpus petition on October 11, 2002 (*see* docket # 1). Counsel was appointed for petitioner (*see* docket # 5, # 9, and # 11).

Petitioner filed his Motion for Leave to Conduct Discovery (docket # 19) (hereafter simply "Motion") on November 13, 2003. Petitioner filed five volumes of exhibits in support of the motion (docket # 20—# 24). Respondents filed an opposition to the discovery motion on December 19, 2003 (docket # 27). Petitioner replied on December 31, 2003 (docket # 28).

Petitioner's discovery motion is before the Court.

## II. *Background Facts* [2]

According to petitioner, he was raised in a dysfunctional and abusive home environment. He was physically and sexually abused. At the age of eleven, he began abusing drugs. Petitioner was arrested at the age of seventeen, and was incarcerated from 1982 to 1992 in the Idaho State Prison on a murder conviction. He was released on parole in the spring of 1992. Petitioner then moved to Longview, Washington.

There, petitioner became romantically involved with Dianne Bauer, and moved into her home, where he lived with Dianne, Rodney Miller (Dianne's ex-husband), and Dianne's two daughters, Megan and Jessi-

ca. The relationship between petitioner and Dianne Bauer was volatile.

According to petitioner, Dianne, too, had a troubled childhood, and had also been subjected to abuse. Dianne, however, came from a wealthy background. Dianne's father, Lester Bauer, was a doctor. Petitioner claims that Dianne spoke of wishing her father would die so that she could inherit money from him.

Dianne had already inherited approximately $100,000 from her grandmother, but spent that money in a period of several months. After that, Dianne withdrew approximately $10,000 from an account that she held jointly with her father. This devastated Dianne's father, and he cut her off financially.

Around February of 1993, petitioner and Dianne began using methamphetamine. At about the same time, their relationship was deteriorating. In late 1993, petitioner moved to Valdez, Alaska. Dianne eventually learned where petitioner had gone, and she followed him there, and moved in with him in January of 1994.

On January 30, 1994, however, petitioner and Dianne ended their relationship. On that date, petitioner discovered that Dianne had allowed her twelve-year-old daughter, Jessica, to go to Las Vegas to visit Dianne's father, Lester. Petitioner was angry about that, because of allegations that Dianne had made concerning sexual abuse by her father.

Petitioner's last contact with Dianne was in April 1994, when he was on an Alaska highway, traveling with a friend. Petitioner and his friend saw Dianne driving her car, and they pulled up alongside of her. According to petitioner, he rolled down his

---

**2.** The facts stated in this section of this order are derived from the statement of facts in petitioner's motion. *See* Motion, pp. 3–11. The Court does not here intend to make any factual findings. This statement of facts alleged by petitioner is set forth only to provide context for the analysis of petitioner's motion.

window and started calling Dianne's name. In response, petitioner claims she "flipped him off." Petitioner returned the gesture.

That month, April 1994, petitioner left Alaska and returned to Longview, Washington. Then, in late May 1994, petitioner traveled from Longview, Washington, to Las Vegas.

On the evening of May 29, 1994, petitioner went to Lester Bauer's home, and killed him. Lester Bauer was found dead in his home on June 2, 1994.

Petitioner was arrested that same day in Santa Barbara, California.

### III. *The Discovery Motion*

#### A. *Overview of Petitioner's Discovery Requests*

Petitioner requests leave of court to serve 73 subpoenas seeking production of documents. The proposed subpoenas are found at Exhibits 1.1—1.73.[3] The following are brief descriptions of those proposed subpoenas (numbered as in petitioner's exhibits):

1.1 to the Las Vegas Metropolitan Police Department (LVMPD), Public Records Section, seeking materials regarding petitioner and the Lester Bauer homicide;

1.2 to the LVMPD, Evidence Vault, seeking materials regarding petitioner and the Lester Bauer homicide;

1.3 to the LVMPD, Communications Section, seeking materials regarding petitioner and the Lester Bauer homicide;

1.4 to the LVMPD, Patrol Division, seeking materials regarding petitioner and the Lester Bauer homicide;

1.5 to the LVMPD, Property Crimes Division, seeking materials regarding petitioner and the Lester Bauer homicide;

1.6 to the LVMPD, Robbery Division, seeking materials regarding petitioner and the Lester Bauer homicide;

1.7 to the LVMPD, Homicide Division, seeking materials regarding petitioner and the Lester Bauer homicide;

1.8 to the LVMPD, Criminalistics Bureau, seeking materials regarding petitioner and the Lester Bauer homicide;

1.9 to the LVMPD, Public Records Section, seeking materials regarding Michael Placencia and Christine Kalter;

1.10 to the LVMPD, Evidence Vault, seeking materials regarding Michael Placencia and Christine Kalter;

1.11 to the LVMPD, Communications Section, seeking materials regarding Michael Placencia and Christine Kalter;

1.12 to the LVMPD, Patrol Division, seeking materials regarding Michael Placencia and Christine Kalter;

1.13 to the LVMPD, Property Crimes Division, seeking materials regarding Michael Placencia and Christine Kalter;

1.14 to the LVMPD, Robbery Division, seeking materials regarding Michael Placencia and Christine Kalter;

---

**3.** The exhibits referred to in this order were filed by petitioner and are found in the record in five volumes at docket # 20—# 24.

1.15 to the LVMPD, Homicide Division, seeking materials regarding Michael Placencia and Christine Kalter;

1.16 to the LVMPD, Criminalistics Bureau, seeking materials regarding Michael Placencia and Christine Kalter;

1.17 to the LVMPD, Organized Crime and Intelligence Unit, seeking materials regarding petitioner, Michael Placencia, and Christine Kalter;

1.18 to the Clark County, Nevada, District Attorney (CCDA), Criminal Division, seeking materials regarding petitioner and the Lester Bauer homicide, and also seeking information regarding certain general policies of the CCDA;

1.19 to the CCDA, Criminal Division, seeking materials regarding petitioner, Michael Placencia, and Christine Kalter, and also seeking information regarding certain general policies of the CCDA;

1.20 to the Clark County, Nevada, Detention Center (CCDC), Inmate Records Section, seeking materials regarding petitioner;

1.21 to the CCDC, Classification Section, seeking materials regarding petitioner;

1.22 to the CCDC, Medical Records Section, seeking materials regarding petitioner;

1.23 to the Clark County, Nevada, Coroner–Medical Examiner, seeking materials regarding Lester Bauer;

1.24 to the Nevada Department of Parole & Probation, Records Department, seeking materials regarding petitioner and the Lester Bauer homicide;

1.25 to David M. Schieck, Esq., in Las Vegas, seeking materials regarding petitioner and the Lester Bauer homicide, and also seeking information regarding certain general practices of Mr. Schieck;

1.26 to the Santa Barbara County, California, Sheriff's Department, seeking materials regarding petitioner;

1.27 to the State of Idaho Department of Corrections, seeking materials regarding petitioner;

1.28 to Franklin D. Master, M.D., in Las Vegas, seeking materials regarding petitioner;

1.29 to William D. O'Gorman, M.D., in Las Vegas, seeking materials regarding petitioner;

1.30 to the Longview, Washington, Police Department, seeking materials regarding petitioner;

1.31 to the Clark County, Washington, Health Department, seeking materials regarding petitioner and his mother, Gail Stinton;

1.32 to the State of Idaho Commission for Pardons & Parole, seeking materials regarding petitioner and the Harold Marley homicide;

1.33 to the Kalama, Washington, Police Department, seeking materials regarding petitioner;

1.34 to the Oregon State Department of Police, seeking materials regarding petitioner;

1.35 to the State of Idaho Department of Health & Welfare, seeking materials regarding Gail Stinton;

1.36 to the State of Idaho Department of Health & Welfare, Bonner County Office, seeking materials regarding Gail Stinton;

1.37 to the State of Idaho Department of Health & Welfare, Benewah

County Office, seeking materials regarding Gail Stinton;

1.38 to the Coeur D'Alene Tribe of Idaho, seeking materials regarding petitioner and Gail Stinton;

1.39 to the Washington State Department of Corrections, Division of Community Corrections, Longview Office, seeking materials regarding petitioner;

1.40 to the Federal Bureau of Investigation (FBI), Seattle Office, seeking materials regarding petitioner;

1.41 to the FBI, Seattle Office, seeking materials regarding Lester Bauer;

1.42 to the FBI, Washington D.C., seeking materials regarding petitioner;

1.43 to the FBI, Washington D.C., seeking materials regarding Lester Bauer;

1.44 to Guinn, Cotterell & Warning, Inc., in Longview, Washington, seeking materials regarding Lester Bauer, and the case of *Bruce J. Bauer, et ux. v. State Corrections,* Washington State Superior Court Case No. 96–2–00738–0;

1.45 to Stephen M. Pittel, Ph.D., in Berkeley, California, seeking materials regarding petitioner;

1.46 to Travis R. Cavens, M.D., in Longview, Washington, seeking materials regarding Rodney Miller and Jessica Miller;

1.47 to Jeanne Fleming, Ph.D., in Longview, Washington, seeking materials regarding Rodney Miller and Jessica Miller;

1.48 to Emma V. Torres–Baltazar, M.D., in Castle Rock, Washington, seeking materials regarding Rodney Miller and Jessica Miller;

1.49 to Segal & McMahan, Chartered, in Las Vegas, seeking materials

regarding Lester Bauer and the Lester Bauer 1991 Trust;

1.50 to the Department of Corrections, State of Washington, seeking materials regarding Lester Bauer, and the case of *Bruce J. Bauer, et ux. v. State Corrections,* Washington State Superior Court Case No. 96–2–00738–0;

1.51 to the Washington State Department of Social & Health Services, Kelso Community Services Office, seeking materials regarding Rodney Miller and Jessica Miller;

1.52 to the Office of the Attorney General, State of Washington, seeking materials regarding Lester Bauer, and the case of *Bruce J. Bauer, et ux. v. State Corrections,* Washington State Superior Court Case No. 96–2–00738–0;

1.53 to Lower Columbia College, in Longview, Washington, seeking materials regarding Dianne Bauer;

1.54 to Saint Martin's College, in Lacey, Washington, seeking materials regarding Dianne Bauer;

1.55 to Daniel P. Featherston, Esq., in Sandpoint, Idaho, seeking materials regarding petitioner and the Harold Marley homicide;

1.56 to Kirkpatrick Family Care Offices, in Longview, Washington, seeking materials regarding petitioner and Gail Stinton;

1.57 to Darrell Jenkins, in Longview, Washington, seeking materials regarding petitioner;

1.58 to the Castle Rock, Washington, Police Department, seeking materials regarding Rodney Miller, Dianne Bauer, and Jessica Miller;

1.59 to the Longview, Washington, Police Department, seeking materi-

als regarding Rodney Miller, Dianne Bauer, and Jessica Miller;

1.60 to the Department of Corrections, Interstate Compact Administrator, in Olympia, Washington, seeking materials regarding Lester Bauer, and the case of *Bruce J. Bauer, et ux. v. State Corrections,* Washington State Superior Court Case No. 96–2–00738–0;

1.61 to the Department of Corrections, Interstate Compact Administrator, in Boise, Idaho, seeking materials regarding Lester Bauer, and the case of *Bruce J. Bauer, et ux. v. State Corrections,* Washington State Superior Court Case No. 96–2–00738–0;

1.62 to the LVMPD, Secret Witness Program, seeking materials regarding petitioner, Michael Plancencia, and Christine Kalter;

1.63 to the LVMPD, Secret Witness Program, seeking materials regarding certain general policies and practices of that program;

1.64 to the LVMPD, Confidential Informant Program, seeking materials regarding petitioner, Michael Plancencia, and Christine Kalter;

1.65 to the LVMPD, Confidential Informant Program, regarding certain general policies and practices of that program;

1.66 to Wells Fargo Bank, N.A., in Las Vegas, seeking materials Lester Bauer and the Lester Bauer 1991 Trust;

1.67 to T. Rowe Price Brokerage, in Baltimore, Maryland, seeking materials Lester Bauer and the Lester Bauer 1991 Trust;

1.68 to Nancy Lemcke, Esq., Clark County, Nevada, Public Defender, seeking materials regarding petitioner, and also seeking informa-tion regarding certain general practices of the Clark County Public Defender;

1.69 to the Clark County, Nevada, Public Defender, seeking materials regarding petitioner, and also seeking information regarding certain general practices of the Clark County Public Defender;

1.70 to Christopher R. Oram, Esq., in Las Vegas, seeking materials regarding petitioner, and also seeking information regarding certain general practices of Mr. Oram;

1.71 to the Washington State Department of Social & Health Services, Kelso Community Services Office, in Kelso, Washington, seeking materials regarding Lester Bauer and Dianne Bauer;

1.72 to the Bonner County, Idaho, County Clerk, in Sandpoint, Idaho, seeking materials regarding petitioner and the Harold Marley homicide; and

1.73 to the Sandpoint, Idaho, Police Department, seeking materials regarding petitioner and the Harold Marley homicide.

*See* Exhibits 1.1—1.73.

In addition, petitioner seeks a court order directing his trial counsel—Christopher Oram, Nancy Lemcke, the Nevada State Public Defender's Office, and David Schieck—to "immediately disclose all files in their possession that relate to petitioner's murder case and his solicitation to commit murder case." Exhibit 3.56.

### B. *Discovery Standards*

Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts states: "A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Proce-

dure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."

The Supreme Court has construed Rule 6, and has held that if through "specific allegations before the court," the petitioner can "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Bracy v. Gramley*, 520 U.S. 899, 908–09, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)).

The Ninth Circuit Court of Appeals has pointed out that "[a] habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant." *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir.1999) (citing *Bracy*, 520 U.S. at 903–05, 117 S.Ct. 1793). "Rather, discovery is available only in the discretion of the court and for good cause shown...." *Id.* The court in *Rich* instructed:

> Habeas is an important safeguard whose goal is to correct real and obvious wrongs. It was never meant to be a fishing expedition for habeas petitioners to "explore their case in search of its existence."

*Rich*, 187 F.3d at 1067.

### C. Analysis

#### 1. Materials in the Possession of Trial Counsel and Dr. Pittel

Petitioner's motion first focuses on the proposed discovery addressed to his trial counsel and a defense expert. *See* Motion, pp. 20–22. Specifically, this portion of petitioner's motion concerns a proposed subpoena to Dr. Stephen Pittel (Exhibit 1.45), and the proposed court order for production of documents by Christopher Oram, Nancy Lemcke, the Nevada State Public Defender's Office, and David Schieck (Exhibit 3.56).

Petitioner states that "the trial transcript reveals that several crucial documents that were supplied to trial counsel's expert, Dr. Stephen Pittel, are not contained in the trial files received by current counsel for petitioner." Motion, p. 20, lines 16–18. Petitioner argues: "Petitioner cannot fully and fairly prove that trial counsel conducted inadequate discovery and independent investigation prior to the trial and sentencing without having copies of what was actually in the possession of defense counsel and their expert." *Id.*, p. 21, lines 11–13.

This is the only suggested habeas claim proffered as grounds for this part of petitioner's proposed discovery: that "trial counsel conducted inadequate discovery and independent investigation prior to the trial and sentencing." The Court does not consider such a generic claim to satisfy the good cause requirement of *Bracy*. The Court understands the *Bracy* requirement that proposed discovery be based upon "specific allegations before the court" to mean something other than merely the recitation of a generic claim, such as "counsel conducted inadequate discovery and investigation."

Moreover, petitioner has made no showing that the claim has been exhausted in state court. Petitioner takes the position that the question of exhaustion is not germane to the good cause issue. *See* Motion, pp. 18–20; Reply (docket #28), p. 2, 7–10. The Court disagrees.

In *Calderon v. United States District Court (Hill)*, 120 F.3d 927 (9th Cir.1997), and *Calderon v. United States District Court (Nicolaus)*, 98 F.3d 1102 (9th Cir. 1996), *cert. denied*, 520 U.S. 1233, 117 S.Ct. 1830, 137 L.Ed.2d 1036 (1997), the court of appeals granted writs of mandamus preventing discovery in federal habeas cases.

In each case, the petitioner sought, and the district court granted, discovery, before the petitioner had filed an exhausted petition. The court of appeals vacated the discovery orders, and prohibited discovery until the petitioners filed petitions presenting exhausted claims. *See Hill*, 120 F.3d at 928; *Nicolaus*, 98 F.3d at 1106–08.

In *Nicolaus*, the petitioner was on California's death row for murder. He maintained that the FBI had not given him all the documents relevant to his case, and he hoped to obtain some of the allegedly withheld documents through discovery. *See Nicolaus*, 98 F.3d at 1104. The petitioner's claim that the FBI withheld documents was unexhausted in state court, and the court of appeals stressed that he had not sought the requested discovery in state court. *Id.* at 1104 n. 1, 1106–07. The court ruled that any right to federal discovery requires exhaustion of the claim upon which the discovery is based. *Id.* at 1106–07.[4] With respect to this point, the court concluded:

> In short, if Nicolaus wishes to allege formally that the FBI has withheld documents that he believes may tend to exonerate him, he should first bring such an unexhausted claim before the California state court.

*Id.* at 1107. In a concurring opinion, Chief Judge Schroeder wrote:

> Of course Nicolaus must first exhaust his claim, along with available avenues of discovery, in state court.

\*     \*     \*     \*     \*     \*

Until Nicolaus has filed a federal habeas petition on an exhausted claim, he cannot avail himself of Rule 6 discovery. *Id.* at 1109.

In *Hill*, another capital habeas case originating in California, the petitioner sought to inspect the files of the Alameda County District Attorney and the Oakland Police Department that pertained to his case. *Hill*, 120 F.3d at 927–28. The district court ordered the discovery, and the respondents sought a writ of mandamus. *Id.* The court of appeals found *Hill* to be indistinguishable from *Nicolaus*. *Id.* at 927. The court issued the writ of mandamus, "[s]ince Hill never presented the district court with a petition for writ of habeas corpus containing an exhausted claim. . . ." *Id.* at 928.

In *Calderon. v. United States District Court (Roberts)*, 113 F.3d 149 (9th Cir. 1997), the court again granted a writ of mandamus, preventing discovery by a federal habeas petitioner. The court stated: "In light of the concession by petitioner that his federal· habeas petition contains unexhausted claims that must be dismissed or pursued in state court before they may be included in the federal habeas petition, discovery at this time is inappropriate." *Roberts*, 113 F.3d at 149.

■    *Hill, Nicolaus*, and *Roberts* predated *Bracy*. However, *Bracy* did not undermine the court of appeals' concern that discovery should not proceed upon unexhausted claims; *Bracy* includes no discussion regarding that issue. At the least, *Hill, Roberts*, and *Nicolaus* still mandate

---

4. There appears to be a typographical error in the published opinion. The opinion, as published, states: "any right to federal discovery presupposes the presentation of an *unexhausted* federal claim, because a federal habeas petitioner is required to exhaust available state remedies as to each of the grounds raised in the petition." *Nicolaus*, 98 F.3d at 1106 (emphasis added). The tenor of the passage, and its context, reflect that the court meant to highlight the importance of the exhaustion requirement. It appears that the court of appeals must have meant to express that any right to federal discovery presupposes the presentation of an *exhausted* federal claim.

that this Court, *in exercising its discretion under Rule 6*, should take into consideration whether the claims to which petitioner's proposed discovery relates are exhausted in state court.

In *McDaniel v. United States District Court (Jones )*, 127 F.3d 886 (9th Cir.1997), a capital habeas case originating in Nevada, the court of appeals upheld a discovery order of this Court, and denied the respondents' petition for a writ of mandamus. The court grounded its ruling in large part on the State's delay in opposing the discovery, and its partial compliance and implicit consent with respect to the discovery. *See Jones*, 127 F.3d at 889. In a concurrence, Judge Rymer stated:

> Just because the state waived its right to appellate review of scheduling orders it had no problem with at the time they were entered, does not mean that it can't have a change of heart in light of *Calderon v. U.S. District Court (Nicolaus )*, 98 F.3d 1102 (9th Cir.1996). While it's too little, too late in this case, Nevada is entitled to argue in another case—where its (new) position is timely preserved—that permitting discovery after a bare-bones petition but before an amended, real petition is on file, and before the court can make a discrete finding of good cause for discovery *on exhausted claims* as required by Rule 6(a), is the same thing in substance if not in form as the procedure for pre-petition discovery that we condemned in *Nicolaus*. Likewise in this action, whether Jones's claims have a basis in the record, *or are exhausted*, or whether there is good cause for discovery are questions for the district court to decide in its discretion, not ours. *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir.1997) ("[D]iscovery is available to habeas petitioners at the discretion of the district court judge for good cause shown.").

*Id.* at 890 (emphasis added). Judge Rymer recognized—post-*Bracy*—that in exercising its discretion under Rule 6 this Court should take into consideration the question whether the claims upon which discovery is requested are exhausted in state court.

In *Calderon v. United States District Court (Thomas )*, 144 F.3d 618 (9th Cir. 1998), the court of appeals denied the respondents' petition for a writ of mandamus, and upheld a district court order allowing the habeas petitioner to take a deposition regarding an unexhausted claim that was not asserted in the petitioner's amended habeas petition. *Thomas*, 144 F.3d at 621–22. However, the limited discovery granted in *Thomas* was allowed under Federal Rule of Civil Procedure 27(a), which allows for pre-complaint (or pre-petition) perpetuation of testimony. Rule 27(a) contains specific requirements, which were satisfied in *Thomas*. *See also Tennison v. Henry*, 203 F.R.D. 435, 439–40 (N.D.Cal.2001) (relying upon *Thomas*, and granting discovery under Rule 27(a) in habeas case). The petitioner in this case does not make his discovery motion under Rule 27(a). *See Nicolaus*, 98 F.3d at 1106 (recognizing that Rule 27 provides under certain circumstances for pre-petition discovery, but pointing out that the petitioner did not contend that his discovery request satisfied the requirements of Rule 27).

██ This Court will not grant the sort of wide-ranging discovery sought by petitioner without a showing that he has exhausted in state court, and has not procedurally defaulted, the claims on which his proposed discovery is based. To do so would tend to undermine the exhaustion requirement, and the doctrine of federal-state comity on which it rests. As the Supreme Court stated in *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 9, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), *superceded by*

statute as stated in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000): "The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings."

Therefore, because of the general and nonspecific nature of the claim on which petitioner seeks discovery from his former counsel and his defense expert, and because petitioner has not shown that claim to be exhausted in state court and not procedurally defaulted, the Court finds that petitioner has not shown good cause within the meaning of *Bracy* to justify this discovery.

■ Nevertheless, in this part of his motion, petitioner seeks information regarding his own case, held by his own attorneys and a defense expert they retained. Petitioner should not have to resort to formal discovery to obtain such material. The Court will, therefore, exercise its discretion to facilitate petitioner's acquisition of the material he seeks in this portion of his motion.

However, it appears that the subpoena petitioner proposes to serve on Dr. Pittel must be revised. Dr. Pittel is located in Berkeley, California; the subpoena requires the requested materials to be produced in Las Vegas. It appears that Dr. Pittel is outside the range of this Court's subpoena power. *See* Fed.R.Civ.P. 45(b)(2). The subpoena to be served on Dr. Pittel must be revised to be issued by an appropriate court, with subpoena power over Dr. Pittel. Petitioner will be granted an opportunity to file, for the Court's review, a revised proposed subpoena for Dr. Pittel (Exhibit 1.45).

As for the proposed court order directing petitioner's trial counsel to turn over documents to him (Exhibit 3.56), it is un-clear to the Court why that is done in the form of a court order, rather than subpoenas. None of the parties to whom the proposed court order is addressed are before this Court; it appears the Court would be without power to enforce the proposed court order. It appears that subpoenas directed to Christopher Oram, Nancy Lemcke, the Nevada State Public Defender's Office, and David Schieck would be the appropriate means of obtaining the materials petitioner seeks.

The Court observes that petitioner has submitted proposed subpoenas for Christopher Oram (Exhibit 1.70), Nancy Lemcke (Exhibit 1.68), and David Schieck (Exhibit 1.25) (petitioner does not discuss those, or even cite to them, in his motion). Those subpoenas, however, include provisions seeking materials "describing the manner in which conflicts of interest among and between actual and/or potential clients were discovered, disclosed and resolved...." *See, e.g.*, Exhibit 1.25, p. 2 of Attachment A, at ¶ 2. Petitioner has not shown good cause for discovery of such materials, and such materials are beyond the scope of petitioner's own files.

The Court will grant petitioner an opportunity to file, for the Court's review, revised proposed subpoenas for Christopher Oram, Nancy Lemcke, and David Schieck. Those revised proposed subpoenas must be drafted to obtain only documents in the attorneys' files concerning petitioner and the prosecution regarding the Lester Bauer homicide. Petitioner will also be granted an opportunity to file, for the Court's review, a proposed subpoena for the Nevada State Public Defender's Office, similarly limited.

2. *Materials Relating to Petitioner and His Family*

Here petitioner presents argument in support of his proposed subpoenas to the

Clark County, Washington, Health Department (Exhibit 1.31); the State of Idaho Department of Health & Welfare (Exhibit 1.35); the State of Idaho Department of Health & Welfare, Bonner County Office (Exhibit 1.36); the State of Idaho Department of Health & Welfare, Benewah County Office (Exhibit 1.37); the Coeur D'Alene Tribe of Idaho (Exhibit 1.38); and the Kirkpatrick Family Care Offices, in Longview, Washington (Exhibit 1.56).

Petitioner requests this discovery to support the following claims:

- "[T]rial counsel were ineffective for failing to investigate and present evidence to support his mental state defense at the guilt phase and failing to investigate and present mitigating evidence at sentencing." Motion, p. 22, lines 11–14 (citing Petition, pp. 3–5).

- "[T]rial counsel were ineffective in failing to investigate and present any evidence from medical records as mitigating evidence at sentencing." Motion, p. 23, lines 4–5.

- "[T]rial counsel were ineffective in failing to investigate and present evidence that would corroborate his abusive home life as a child." Motion, p. 23, lines 20–21.

- "Trial counsel were ineffective in failing to investigate and present this evidence as rebuttal evidence when the state offered evidence of Mr. Sherman's juvenile adjudications as evidence in aggravation during the penalty phase." Motion, p. 23, line 26—p. 24, line 2.

- "Trial counsel's unreasonable failure to acquire available medical, psychiatric, social services and other family history records unconstitutionally deprived Mr. Sherman of an accurate and individualized sentencing determination...." Motion, p. 24, lines 8–10.

- "Trial counsel were also ineffective in failing to investigate and provide this corroborating information to their expert for the purposes of rendering a diagnosis...." Motion, p. 24, lines 15–17.

- "[T]rial counsel unreasonably failed to investigate evidence of [petitioner's] family background in order to obtain mitigating evidence that could have been used in guilt and penalty phases of trial." Reply, p. 4, lines 4–6.

█ In this portion of his motion, petitioner provides some specific information about the nature of the claims on which he seeks discovery. However, here again, petitioner has not shown that any of his claims are exhausted in state court, and not procedurally defaulted. Therefore, the Court finds that petitioner has not shown the sort of good cause contemplated in *Bracy.*

Nevertheless, to the extent that these subpoenas seek only information regarding petitioner himself, the Court will exercise its discretion to allow this discovery.

It appears, however, that the proposed subpoenas (Exhibits 1.31, 1.35, 1.36, 1.37, 1.38, and 1.56) must be revised. Each of those subpoenas seeks production in Las Vegas of materials located outside this district, and more than 100 miles from the place designated for the production. These proposed subpoenas should be revised to be issued by an appropriate federal district court, with subpoena power over the entities holding the materials.

The Court will also require petitioner to revise the proposed subpoenas at Exhibits 1.31, 1.35, 1.36, 1.37, 1.38, and 1.56 to seek only information regarding petitioner himself. Petitioner has not shown that Gail Stinton consents to the disclosure of her personal information. The Court will not grant discovery of such personal information regarding another person absent a showing of good cause by petitioner.

Petitioner will be granted an opportunity to file, for the Court's review, revised proposed subpoenas for the Clark County, Washington, Health Department (Exhibit 1.31); the State of Idaho Department of Health & Welfare (Exhibit 1.35); the State of Idaho Department of Health & Welfare, Bonner County Office (Exhibit 1.36); the State of Idaho Department of Health & Welfare, Benewah County Office (Exhibit 1.37); the Coeur D'Alene Tribe of Idaho (Exhibit 1.38); and the Kirkpatrick Family Care Offices, in Longview, Washington (Exhibit 1.56).

### 3. Materials Regarding Statements Made by Dianne Bauer

As the Court understands the next part of petitioner's motion, petitioner seeks to serve subpoenas on the FBI, Seattle Office (Exhibit 1.40); Travis R. Cavens, M.D., in Longview, Washington (Exhibit 1.46); Jeanne Fleming, Ph.D., in Longview, Washington (Exhibit 1.47); Emma V. Torres–Baltazar, M.D., in Castle Rock, Washington (Exhibit 1.48); Segal & McMahan, Chartered, in Las Vegas (Exhibit 1.49); the Washington State Department of Social & Health Services, Kelso Community Services Office (Exhibit 1.51); Lower Columbia College, in Longview, Washington (Exhibit 1.53); Saint Martin's College, in Lacey, Washington (Exhibit 1.54); Darrell Jenkins, in Longview, Washington (Exhibit 1.57); the Castle Rock, Washington, Police Department (Exhibit 1.58); the Longview, Washington, Police Department (Exhibits 1.30 and 1.59); Wells Fargo Bank, N.A., in Las Vegas (Exhibit 1.66); T. Rowe Price Brokerage, in Baltimore, Maryland (Exhibit 1.67); and the Washington State Department of Social & Health Services, Kelso Community Services Office, in Kelso, Washington (Exhibit 1.71).

Petitioner seeks from those sources discovery of materials "corroborating statements made by Dianne Bauer." Motion, p. 25; see, generally, id. at 25–35. Petitioner describes, as follows, the several habeas claims that he claims support this proposed discovery:

- "[T]rial counsel were ineffective in the guilt and penalty phases by failing to investigate and present evidence to corroborate his mental state defense." Motion, p. 26, lines 3–4.

- "Trial counsel were ineffective in failing to supply their expert psychologist, Dr. Stephen Pittel, with the information that he requested on Dianne Bauer in order to formulate his opinion." Motion, p. 26, lines 7–8; see also Motion, pp. 28, 31, 32.

- "Trial counsel failed to obtain court records showing that Dianne Bauer had made allegations of sexual abuse against Penny Miller, Rodney Miller's ex-wife." Motion, p. 27, lines 5–7.

- "[I]t was unreasonable for [trial counsel] to fail to obtain the phone records of the [Longview Police Department and the FBI, Seattle field office] to show that Dianne did not call them." Motion, p. 29, lines 20–22.

- "Good cause for discovery exists to allow petitioner to support his theory of ineffective assistance for failure to pursue [financial information on Lester and Dianne Bauer]." Motion, p. 30, lines 16–17.

- "Trial counsel were ineffective in failing to acquire all of the items of information discussed above to support Mr. Sherman's primary defense at trial." Motion, p. 31, lines 5–7.

- "The trial court clearly erred by excluding evidence of Dianne Bauer's sexual abuse allegations, which were relevant to show the effect that these allegations had on Mr. Sherman when such evidence was critical to assessing his state of mind and relevant to show his subjective lack of specific intent to

premeditate and deliberate." Motion, p. 32, lines 19–22.

- "Just as important, trial counsel's failure to investigate and present the evidence above—combined with the trial court's erroneous evidentiary ruling and the state's exploitation of this error—unconstitutionally deprived Mr. Sherman of an opportunity to rebut the motive evidence proffered by the prosecution under *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)." Motion, p. 33, lines 12–15.

- "Finally, trial counsel's failure to investigate and present the evidence above deprived the sentencing body of the ability to make an accurate and individualized assessment of Mr. Sherman's culpability." Motion, p. 34, lines 13–15.

■ Petitioner does not show that he has presented any of these claims in state court. As is discussed above, the Court will not exercise its discretion to allow such extensive discovery on claims that cannot lead to habeas relief. Because he has not shown any of the specific claims that he makes to have been exhausted in state court and not procedurally defaulted, the Court finds that petitioner has not shown good cause for the discovery that he seeks in this portion of his motion.

### 4. *Law Enforcement and Prosecution Materials*

In the next part of his motion, petitioner requests leave to serve subpoenas seeking production of documents by the following law enforcement and prosecution entities: the LVMPD, Public Records Section (Exhibits 1.1 and 1.9); the LVMPD, Evidence Vault (Exhibits 1.2 and 1.10); the LVMPD, Communications Section (Exhibits 1.3 and 1.11); the LVMPD, Patrol Division (Exhibits 1.4 and 1.12); the LVMPD, Property Crimes Division (Exhibits 1.5 and 1.13); the LVMPD, Robbery Division (Exhibits 1.6 and 1.14); the LVMPD, Homicide Division (Exhibits 1.7 and 1.15); the LVMPD, Criminalistics Bureau (Exhibits 1.8 and 1.16); the LVMPD, Organized Crime and Intelligence Unit (Exhibit 1.17); the CCDA, Criminal Division (Exhibits 1.18 and 1.19); the Longview, Washington, Police Department (Exhibit 1.30); the Kalama, Washington, Police Department (Exhibit 1.33); the Oregon State Department of Police (Exhibit 1.34); the FBI, Seattle Office (Exhibit 1.40); the FBI, Washington D.C. (Exhibit 1.42), Daniel P. Featherston, Esq., in Sandpoint, Idaho (Exhibit 1.55), the LVMPD, Secret Witness Program (Exhibits 1.62 and 1.63); the LVMPD, Confidential Informant Program (Exhibits 1.64 and 1.65); the Bonner County, Idaho, County Clerk, in Sandpoint, Idaho (Exhibit 1.72); and the Sandpoint, Idaho, Police Department (Exhibit 1.73). *See* Motion, pp. 35, 39, 42, 46, 48, and 57.

Petitioner also seeks to serve subpoenas on the following entities and individuals involved in a civil action filed in Washington by Dianne Bauer and her brother, Bruce Bauer: the Washington State Department of Corrections, Division of Community Corrections (Exhibit 1.39); the Department of Corrections, State of Washington (Exhibit 1.50); the Department of Corrections, Interstate Compact Administrator, in Olympia, Washington (Exhibit 1.60); and the Department of Corrections, Interstate Compact Administrator, in Boise, Idaho (Exhibit 1.61). *See* Motion, p. 37, footnote 23.

Petitioner also seeks to serve subpoenas for materials in the possession of the Clark County Detention Center (CCDC). Those subpoenas are specifically directed to the CCDC, Inmate Records Section (Exhibit 1.20); the CCDC, Classification Section

(Exhibit 1.21); and the CCDC, Medical Records Section (Exhibit 1.22).

Here again, petitioner seeks to justify this broad proposed discovery by describing an array of claims of ineffective assistance of counsel:

- Trial counsel was ineffective for not obtaining those materials. Motion, p. 36, lines 21–22; p. 37, lines 22–24;
- "[T]rial counsel were ineffective in failing to adequately litigate the trial court's decision to shackle [petitioner] with a stun belt." Motion, p. 38, lines 4–5, and p. 38, lines 25–28.
- "[T]rial counsel were ineffective in failing to conduct an investigation of the unidentified fingerprints obtained at the crime scene." Motion, p. 39, lines 4–5.
- Trial counsel was ineffective for not attempting to make an identification of the unidentified finger prints found in Lester Bauer's home. Motion, p. 40, lines 3–4 and lines 9–11.
- Trial counsel were ineffective because "they failed to litigate the state's failure to disclose evidence revealing the petitioner's whereabouts in the period leading up to the offense." Motion, p. 41, lines 2–4.
- "[T]rial counsel unreasonably failed to investigate whether Dianne Bauer was lying when she testified that she had called the FBI and the Longview Police Department." Motion, p. 42, lines 3–5 and lines 17–20.
- "[T]rial counsel were ineffective in failing to investigate and present exculpatory and impeachment information to rebut the state's assertion that Mr. Sherman solicited Michael Placencia to commit murder while confined in the Clark County Detention Center." Motion, p. 42, line 26—p. 43, line 1.
- "[T]rial counsel unreasonably failed to conduct discovery and litigate the is-

sue of benefits to informant witnesses Placencia and Kalter." Motion, p. 43, footnote 26.

- "Trial counsel were ineffective in failing to try to obtain the memos ... that were written by Ms. Blaskey, while representing Mr. Sherman, which detail the fact that Kalter expected to receive lenient sentencing in exchange for her cooperation." Motion, p. 48, lines 16–19.
- "[T]rial counsel were ineffective in failing to seek discovery and adequately litigate the state's failure to disclose material impeachment information on its informant witnesses." Motion, p. 48, lines 18–21.
- "[T]rial counsel were ineffective in failing to rebut the state's penalty phase presentation of the solicitation to commit murder offense." Motion, p. 48, lines 22–24.
- "It was unreasonable for trial counsel not to seek discovery from the state of information on the solicitation offense or any information in the various divisions of Metro relating to Michael Placencia and Christine Kalter." Motion, p. 49, lines 1–3.
- "[T]rial counsel were ineffective because they failed to investigate all possible defenses." Motion, p. 50, lines 18–19.
- The prosecution failed to comply with its constitutional disclosure obligations. Motion, p. 55, lines 9–12.
- "[T]rial counsel were ineffective in failing to investigate and present mitigating evidence at his capital sentencing to rebut the state's presentation of petitioner's prior murder conviction in Idaho in 1982." Motion, p. 57, lines 20–23, and p. 59, lines 1–3 and 13–15.

The claims that petitioner formulates appear tailored to justify his discovery.

For the most part, at the heart of these claims, petitioner essentially asserts that his trial counsel unreasonably failed to seek the discovery that petitioner seeks now. If no more than that were required for a showing of good cause under *Bracy,* habeas petitioners would have a free pass to conduct any discovery remotely related to their case.

█ As is discussed above, the Court will not grant this sort of wide-ranging discovery without a showing that the subject habeas claims are procedurally viable—exhausted and not procedurally defaulted.

Petitioner has made no such showing.

5. Exhibits 1.23, 1.24, 1.26, 1.27, 1.28, 1.29, 1.32, *1.41, 1.43, 1.44, 1.52, and 1.69*

In his moving papers, petitioner does not discuss, or cite to, the proposed subpoenas found at Exhibits 1.23, 1.24, 1.26, 1.27, 1.28, 1.29, 1.32, 1.41, 1.43, 1.44, 1.52, and 1.69. The burden is on petitioner to show good cause for his discovery. Petitioner clearly has not carried that burden with respect to these proposed subpoenas.

**IT IS THEREFORE ORDERED** that petitioner's Motion for Leave to Conduct Discovery (docket # 19) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that petitioner shall have **thirty (30) days** from the date of entry of this order to file and serve revised proposed subpoenas addressed to Stephen M. Pittel, Ph.D. (Exhibit 1.45), Christopher Oram (Exhibit 1.70), Nancy Lemcke (Exhibit 1.68), David Schieck (Exhibit 1.25), the Clark County, Washington, Health Department (Exhibit 1.31), the State of Idaho Department of Health & Welfare (Exhibit 1.35), the State of Idaho Department of Health & Welfare, Bonner County Office (Exhibit 1.36), the State of Idaho Department of Health & Welfare, Benewah County Office (Exhibit 1.37), the Coeur D'Alene Tribe of Idaho (Exhibit 1.38), and the Kirkpatrick Family Care Offices, in Longview, Washington (Exhibit 1.56), as instructed above, and to file and serve a newly-drafted proposed subpoena for the Nevada State Public Defender's Office, as instructed above. After those proposed subpoenas are filed, the Court will further consider whether leave shall be granted for their service. In all other respects, petitioner's Motion for Leave to Conduct Discovery is denied.

**IT IS FURTHER ORDERED** that petitioner shall not serve any subpoena unless and until this Court grants him leave to do so.